Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/07/2021 08:12 AM CDT

MEAGHANN SHAW WEAVER, APPELLEE, V.
JOHN GLEN WEAVER, APPELLANT.

___ N.W.2d ___

Filed February 12, 2021.    No. S-19-1058.

1. **Divorce: Judgments: Appeal and Error.** The meaning of a divorce decree presents a question of law in connection with which an appellate court reaches a conclusion independent of the determination reached by the court below.

2. **Equity: Appeal and Error.** In an appeal of an equity action, an appellate court tries the factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court.

3. **Appeal and Error.** In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions with respect to the matters at issue. When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.

4. **Child Custody: Appeal and Error.** Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion.

5. **Divorce: Modification of Decree: Minors.** A decree of divorce, insofar as minor children are concerned, is never final in the sense that it cannot be changed, but is subject to review at any time in the light of changing conditions.

6. **Modification of Decree: Visitation.** The right of parenting time is subject to continual review by the court, and a party may seek modification of a parenting time order on the grounds that there has been a material change in circumstances.

7. **Modification of Decree: Child Custody: Proof.** Two steps of proof must be taken by the party seeking modification of a child custody order. First, the party seeking modification must show by a preponderance

of the evidence a material change in circumstances that has occurred after the entry of the previous custody order and that affects the best interests of the child. Second, the party seeking modification must prove that changing the child's custody is in the child's best interests.

8. ____: ____: ____. A custody order will not be modified absent proof of new facts and circumstances arising since it was entered.

9. **Divorce: Property Settlement Agreements: Final Orders.** A decree is a judgment, and once a decree for dissolution becomes final, its meaning, including the settlement agreement incorporated therein, is determined as a matter of law from the four corners of the decree itself.

10. **Divorce: Judgments: Intent.** The meaning of a decree must be determined from all parts thereof, read in its entirety, and must be construed as a whole so as to give effect to every word and part, if possible, and bring all of its parts into harmony as far as this can be done by fair and reasonable interpretation. Effect must be given to every part thereof, including such effect and consequences that follow the necessary legal implication of its terms, although not expressed.

11. **Modification of Decree: Words and Phrases.** Material change in circumstances eludes precise and concise definition.

12. ____: ____. Generally speaking, a material change in circumstances is the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently.

13. **Child Custody.** If a permanent, as opposed to temporary, order changing custody is to be made, it should appear to the court that the change of circumstances is more or less permanent or continuous and not merely transitory or temporary.

14. **Modification of Decree: Evidence: Appeal and Error.** Where the party seeking modification advances multiple reasons for modification, an appellate court does not consider whether each individual factor standing alone constitutes a material change. The appellate court instead considers all the facts and circumstances raised by the evidence to determine whether there has been a material change.

15. **Divorce: Final Orders: Actions.** A dissolution decree is conclusive in any future action between the parties only as to the facts that were directly in issue and actually or necessarily determined therein.

16. ____: ____: ____. A dissolution decree is not considered conclusive as to questions that might have been, but were not, litigated in the original action.

17. **Appeal and Error.** An appellee's argument that a lower court's decision should be upheld on grounds specifically rejected below constitutes

a request for affirmative relief, and the appellee must cross-appeal in order for that argument to be considered.

18. \_\_\_\_. An appellee may not raise arguments independent of or not responsive to an appellant's assignments of error without cross-appealing because they will fall beyond the scope of the case as presented in the appellant's brief.

Petition for further review from the Court of Appeals, Moore, Chief Judge, and Riedmann and Arterburn, Judges, on appeal thereto from the District Court for Douglas County, James T. Gleason, Judge. Judgment of Court of Appeals affirmed.

Stephanie Flynn, of Stephanie Flynn Law, P.C., L.L.O., for appellant.

Virginia A. Albers, of Slowiaczek Albers, P.C., L.L.O., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Freudenberg, J.
## I. NATURE OF CASE
A father appeals the district court's denial of his motion to modify parenting time after the court concluded that while more parenting time with the father would be in the child's best interests, the father had failed to demonstrate a material change of circumstances. At issue is the meaning of the provision in the custody agreement incorporated into the decree stating that if a dispute over modification were submitted to a court, such court would apply the "then-governing legal standard." Also at issue are the factors applicable to determining whether there has been a material change of circumstances. On further review, albeit for different reasons, we affirm the Nebraska Court of Appeals' opinion, which reversed the judgment of the district court and remanded the cause with directions.

## II. BACKGROUND

A decree of divorce for John Glen Weaver (Glen) and Meaghann Shaw Weaver was entered by the District of Columbia Superior Court in May 2016. Subsequently, both Glen and Meaghann moved to Omaha, Nebraska. Pursuant to Neb. Rev. Stat. § 42-711 (Reissue 2016), the foreign decree was registered in Nebraska in May 2017.

One child was born of the marriage, in July 2015. The decree incorporated a settlement agreement. The settlement agreement provided that Meaghann shall have sole physical custody of the child, with parenting time for Glen, and that Glen and Meaghann were to have shared joint legal custody.

### 1. Custody Agreement

### (a) Glen's Parenting Time

The agreement set forth that Meaghann planned on moving with the child to Omaha and that Glen, who is in the U.S. Air Force, was trying to get stationed there. Under the provisions of the agreement governing physical custody, set forth in paragraph 4.1, when Meaghann and the child moved to Omaha in July 2016, and in the event Glen was also able to be stationed in Omaha, then "the parties will work together to implement gradually, and over time, a schedule in which Glen will visit with [the child] every other weekend (Friday — Sunday) and one dinnertime visit every other week."

Additionally, Glen would have parenting time with the child while she was in daycare when Meaghann was working:

> Glen may visit with [the child] on occasion while [the child] is in work-related daycare, so long as Glen provides reasonable notice of any such visit, such visits do not take place at Meaghann's home, and such visits are not disruptive to [the child] and do not interfere with any plans or activities associated with [the child's] daycare or planned by her daycare provider.

Under a separate paragraph governing child care expenses, the parties contemplated that until July 31, 2016, the child's

maternal grandmother would be the childcare provider, inasmuch as it described payment to the grandmother for these services. Specifically, the agreement stated that for care provided between August 15, 2015, and July 31, 2016, both Glen and Meaghann were to "have gifted $17,500" to her by June 1, 2016. Starting August 1, 2016, "the parties will contribute toward the cost of [the child's] work-related childcare, with Glen setting the limit of his contribution toward childcare in Nebraska at . . . $200/week." By its terms, the agreement did not specifically contemplate at what location the daycare for the child would take place or who would provide the daycare after July 31, 2016.

In the event the child were "at some point in the future" enrolled in private school "by mutual agreement of the parties," Glen would contribute a minimum of $1,000 annually toward private school tuition. If the parties were unable to reach an agreement about whether the child should enroll in private school, they were directed to follow the protocol set forth in the agreement for "Dispute Resolution Regarding Child Custody."

According to the agreement, at the time it was made, Glen had been visiting the child 1 hour every Monday, Wednesday, and Friday, from 5 to 6 p.m., plus an additional weekend day each week for 1 to 3 hours.

There was a provision in the agreement for Glen to be able to see the child 3 to 4 hours per day during an anticipated upcoming 10-day leave. Beyond that, no provision was set forth in the agreement regarding parenting time during holidays, vacations, or school breaks.

Meachann agreed that during the time that both parties lived in the District of Columbia, in addition to accommodating the described schedule for parenting time, she would "consider in good faith requests for incrementally longer visits so long as such visits do not interfere with [the child's] eating or sleeping schedule."

The implementation of the graduated schedule set forth in the agreement was for the eventuality that both parties moved to Omaha and was to occur over a period of 4 months.

### (b) Modification Provisions

Paragraph 4.2 of the agreement, entitled "Modification of Physical Custody," described that "either party may request a modification to the physical custody" "[u]pon a material and significant change in circumstance of either party, or in the needs or interests of [the child]."

Paragraph 4.2 explained that the parties were to "discuss negotiation of a modification of custody in good faith and attempt to agree upon a resolution that is in the best interests of [the child]." In the event Glenn and Meaghann were "unable to agree," they were to follow the protocols set forth in the agreement for "Dispute Resolution Regarding Child Custody." In full, paragraph 4.2 provided:

> **Modification of Physical Custody.** Upon a material and significant change in circumstance of either party, or in the needs or interests of [the child], either party may request a modification to the physical custody of [the child]. Upon such a request, the parties will discuss the modification in good faith and attempt to agree upon a resolution that is in the best interests of [the child]. If either party believes the terms of this Agreement related to custody are not in [the child's] best interest at a future time, the parties may discuss negotiation of a modification of custody in good faith and attempt to agree upon a resolution that is in the best interests of [the child]. If the parties are unable to agree, they shall follow the protocols for Dispute Resolution Regarding Child Custody set forth herein.

In turn, paragraph 4.4, entitled "Dispute Resolution Regarding Child Custody," stated that in the event the parties were unable "to resolve the dispute through several discussions on their own, they agree to meet with a mutually agreed

upon mediator or facilitator, or they will meet with an expert in the field of the dispute (physician, teacher, etc.) to gain more information and advice."

But if they were unable to reach an agreement by these means, either party could petition a court for relief, with the court to apply the "then-governing legal standard to such a request for modification of custody":

> In the event the parties are unable to reach an agreement through this dispute resolution process, including agreements related to modifications in the physical custody schedule as provided in Paragraph 4.1 and 4.2 *supra*, either party may petition a court of competent jurisdiction for relief, provided however that any court of competent jurisdiction shall apply the then-governing legal standard to such a request for modification of custody.

### (c) Construction Provisions

The decree did not set forth any other future contingencies relevant to physical custody. In paragraph 14.15, entitled "Construction of this Agreement," it was agreed that because both parties and their counsel participated in drafting the agreement, no provision shall be interpreted for or against a party merely because the party or that party's legal representative drafted the provision. On appeal, Glen asserts that he was not represented by counsel in forming the custody agreement. And the decree sets forth on the signature page that Glen represented himself pro se. The signature page demonstrates that Meaghann, in contrast, was represented by counsel.

### 2. Complaint to Modify

In December 2017, Glen filed a complaint to modify the decree by awarding the parties joint physical custody of the child. A prior complaint to modify filed in February 2017 had been dismissed for lack of prosecution in November 2017.

Glen asserted in the complaint that since the time of the decree, there had been material changes in circumstances warranting modification. As relevant here, Glen specifically

alleged as material changes in circumstances the move to Omaha, the parties' incomes, and Meaghann's failure to abide by the decree's provisions relating to parenting time while the child was in daycare or to abide by provisions of joint legal custody relating to involving Glen in educational, medical, and religious decisions. Further, the complaint alleged that both parties' work schedules had changed, including a significant change to Glen's "prior deployment schedule" as a current active duty service member.

Meaghann denied the allegations of material changes in circumstances. She alleged that they were all known and taken into consideration at the time of the decree. Meaghann alleged that she had fully complied with the provisions of the decree and that any failure to comply with the parenting plan was solely based on Glen's actions.

The court ordered settlement negotiations or mediation, which were unsuccessful, and a modification hearing was held.

### 3. Modification Hearing

Glen's attorney argued at the hearing that there was a material change of circumstances and that it was against public policy for the custody arrangement set forth in the decree to remain in effect. Meaghann's attorney asserted that nothing had changed that was not contemplated by the parties when they entered into the custody agreement.

### (a) Glen's Testimony

Glen testified that he received orders on June 9, 2016, to be stationed in Omaha. The orders were entered into evidence as an exhibit. Glen currently works 8 a.m. to 4:30 p.m., Monday through Friday. At the time of the hearing on the motion to modify, Glen was 4 months from retirement eligibility and did not believe he would be restationed. He has also been under deployment limitations for the past year, since March 2018, due to a malignant melanoma diagnosis. He is currently in remission. Glen was uncertain whether he would choose to

retire, explaining that he "love[d] serving the Air Force" and would continue to do so if allowed to stay in Omaha, but stating that "[i]f they ask me to move, I will retire." Glen testified that the scope of his responsibilities in his current position in the Air Force as a colonel supporting a base wing commander is "a lot different" from the position he held before, supporting a four-star general who was the chairman of the Joint Chiefs of Staff at the Pentagon. He described that "the level of responsibility and time required and flexibility of schedule [are] greatly different."

Since moving to Omaha, Glen has exercised visitation every other Friday from 4:30 p.m. until Sunday at 4 p.m., as well as every other Wednesday from 4:30 to 6:30 p.m. Except for the time outlined in a court order during the pendency of his complaint to modify, Glen had not been allowed any parenting time for a holiday, including Father's Day, unless it happened to correspond with his scheduled parenting time every other weekend and dinnertime every other Wednesday.

Glen admitted that Meaghann has not denied him his scheduled parenting time every other weekend or every other Wednesday, but testified that she had denied him parenting time while the child was in daycare. Glen elaborated that despite his requests, during the past year, Meaghann had allowed him to visit the child only once while she was in daycare. That visit took place at the preschool.

Glen testified that he has not been consulted by Meaghann in determining what daycare the child would attend. He was concerned with Meaghann's unilateral decisionmaking on matters over which they had joint legal custody. In fact, other than learning where the child went to preschool, he did not know how the child was cared for while Meaghann was at work. Glen testified that when he inquired, Meaghann told him only that the child is "in a safe place."

Glen testified that he did not contemplate at the time of the agreement that he would be spending so little time with his child. Meaghann had refused many requests for voluntary

extensions of parenting time, and Glen noted that a maximum of 2 days in a week did not allow time for him to take the child to see out-of-town relatives and that he considered it generally insufficient time in which to be the kind of father he wished to be.

### (b) Meaghann's Testimony

Meaghann testified that during the workweek, Meaghann's mother provides daycare for the child at Meaghann's home. Two mornings a week, the child is cared for outside the home at a preschool program. The child also has weekly activities such as music, children's Bible study, and Spanish lessons. Meaghann's mother provides transportation to and from preschool and activities.

Meaghann testified that she had kept Glen abreast of where the child was attending preschool and the details of the preschool curriculum. She also described that she had attempted to engage in discussions with Glen about where the child should attend preschool. She did not address whether she had discussed with Glen or informed Glen of the child's in-home daycare arrangements.

Meaghann testified that she had never done anything to prevent Glen from visiting the child while at preschool. Again, she did not address whether she had rejected Glen's requests to see the child while being cared for by her mother in Meaghann's home.

Meaghann testified that she had offered to allow Glen to have a meal with the child over various Christmas holidays, but that he did so only once. Meaghann testified more generally with respect to holidays that she had "no objection to [the child's] seeing [Glen] so long as it's conducive to her development and to her schedule." Meaghann admitted she had rejected Glen's requests to spend as holiday visitation "an extended duration of days out of state." Meaghann pointed out that there had been weekend visitations that Glen had chosen to forfeit. She was unsure on what grounds, but believed they

were due to "personal vacations." Meaghann explained that she has on occasion offered Glen makeup parenting times.

Meaghann susggested, in the event the court considered changing parenting time, adding alternating Tuesdays overnight to the alternating Wednesdays at dinnertime, as well as adding holidays and vacation time. Meaghann explained that mediation was unsuccessful in part because she considered Glen's requests to, for example, have parenting time so that he could spend 7 to 10 days out of the country vacationing with their child to be "extreme" in terms of "many components, international components, duration."

### 4. Order Finding More Visitation Would Be in Child's Best Interests but No Change of Circumstances Warranting Modification

Following the trial, in August 2019, the court denied the relief sought in the complaint for modification, taxing to each party his or her own costs and fees. The court found that it would be in the best interests of the child to have more visitation time with Glen. Nevertheless, the court found that no material change in circumstances had occurred and that "all of the matters complained of . . . as a basis for the claim of material change in circumstance were within the contemplation of the parties as shown in the separation and property settlement agreement which is incorporated into the Decree of Dissolution." The court did not elaborate as to what specific facts formed the basis for this conclusion.

Glen filed a motion to alter or amend, asserting he had proved a material change in circumstances. The court denied the motion and Glen appealed.

### 5. Appeal to Court of Appeals

Glen's appeal was initially taken up by the Court of Appeals. In his appellate brief, Glen argues that the trial court had mistakenly found that under the divorce decree, he was required to prove a material change in circumstances

in order to obtain a court order changing parenting time. Alternatively, Glen argues that he had demonstrated a material change in circumstances. Finally, Glen proposes that because modification under Neb. Rev. Stat. § 42-364(6) (Reissue 2016) is governed by the Parenting Act[1] and the Parenting Act focuses on the best interests of the child and states that the "relationship between the child and each parent should be equally considered,"[2] courts, acting in equity, should not rigidly adhere to the rule, set forth only in case law, that a substantial and material change in circumstances must always be shown before modifying custody.

The Court of Appeals held that under the plain language of paragraph 4.2 of the agreement incorporated into the decree, the parties had agreed that modification of physical custody was permissible without a material change in circumstances, so long as the modification was in the best interests of the child. The Court of Appeals reasoned that these terms, incorporated into the foreign decree, had to be given full faith and credit under the Full Faith and Credit Clause of U.S. Const. art. IV, § 1; 28 U.S.C. § 1738A (2012); and the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA).[3] Furthermore, the Court of Appeals cited to its opinion in *Walters v. Walters*[4] for the proposition that we will generally enforce valid stipulations in dissolution decrees, including an agreement that physical custody may be modified without showing a material change in circumstances, as long as the modification comports with a child's best interests.

Because the Court of Appeals found that the parties had stipulated to allow modification in the absence of a material

---

[1] Neb. Rev. Stat. §§ 43-2920 to 43-2943 (Reissue 2016 & Cum. Supp. 2018).

[2] § 43-2921.

[3] Neb. Rev. Stat. §§ 43-1226 to 43-1266 (Reissue 2016 & Cum. Supp. 2018).

[4] *Walters v. Walters*, 12 Neb. App. 340, 673 N.W.2d 585 (2004).

change in circumstances, the Court of Appeals did not decide whether a court in equity may grant a motion to modify a custody decree without a material change in circumstances when the parties' agreement incorporated into the decree is silent on the question. And because the Court of Appeals found that the district court had abused its discretion by requiring that Glen prove a material change in circumstances, it did not determine whether the district court erred in its determination that there had been no material change in circumstances.

Because the district court found it would be in the child's best interests to have more time with Glen, the Court of Appeals reversed the order denying modification and remanded the cause with directions for the district court to consider the relief sought in accordance with the best interests of the child.

We granted Meaghann's petition for further review.

## III. ASSIGNMENTS OF ERROR

Meaghann assigns in her petition for further review that the Court of Appeals erred by (1) finding that the parties' separation and property settlement agreement contained a stipulation allowing that a modification of custody or visitation could be sought solely on the best interests of the minor child without a change in circumstances; (2) finding that Glen was not required to prove a material change in circumstances before granting a modification of custody or visitation, ignoring Nebraska precedent holding that stipulations are not binding upon courts; (3) failing to consider the totality of the testimony adduced at trial; and (4) awarding Glen attorney fees on appeal.

In his appeal from the district court's order denying modification, Glen assigns that (1) the trial court erred in determining he was required to plead and prove a substantial and material change in circumstances, (2) the trial court erred in determining he failed to prove a substantial and material change in circumstances not within the contemplation of the parties at the time the original judgment had taken place, (3) the trial court erred in failing to determine that child custody

modifications should be determined on the basis of the best interests of minor children and should have found that the original judgment violated the Parenting Act, and (4) administrative dismissal of the first complaint to modify was not a decision on the merits.

## IV. STANDARD OF REVIEW

[1] The meaning of a divorce decree presents a question of law in connection with which we reach a conclusion independent of the determination reached by the court below.[5]

[2,3] In an appeal of an equity action, this court tries the factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court.[6] In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions with respect to the matters at issue.[7] When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.[8]

[4] Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion.[9]

## V. ANALYSIS

Section 43-1260 provides that a court of this state shall accord full faith and credit to an order issued by another state and consistent with the UCCJEA which enforces a child

---

[5] *Bayne v. Bayne*, 302 Neb. 858, 925 N.W.2d 687 (2019).

[6] *Hall v. Hall*, 238 Neb. 686, 472 N.W.2d 217 (1991).

[7] *Rauch v. Rauch*, 256 Neb. 257, 590 N.W.2d 170 (1999).

[8] *Id*.

[9] *State on behalf of Jakai C. v. Tiffany M.*, 292 Neb. 68, 871 N.W.2d 230 (2015).

custody determination by a court of another state. Section 43-1240 provides for jurisdiction to modify a child custody determination made by a court of another state. Section 42-364(6) sets forth that modification proceedings relating to custody, parenting time, and visitation shall be commenced by filing a complaint to modify; sets forth that modification of a parenting plan is governed by the Parenting Act; and describes an initial process of dispute resolution. The Parenting Act sets forth that in determining custody and parenting arrangements, the court shall consider the best interests of the minor child.[10]

[5,6] No statute specifically addresses any threshold inquiry limiting when a court may consider whether the best interests of the minor child warrant modification of a dissolution decree in order to effect a change in custody, parenting time, or visitation. We have explained that a decree of divorce, insofar as minor children are concerned, is never final in the sense that it cannot be changed, but is subject to review at any time in the light of changing conditions.[11] The right of parenting time is subject to continual review by the court, and a party may seek modification of a parenting time order on the grounds that there has been a material change in circumstances.[12]

[7] We have repeatedly held that prior to the modification of a child custody order, two steps of proof must be taken by the party seeking the modification.[13] First, the party seeking modification must show by a preponderance of the evidence a material change in circumstances that has occurred after the entry of the previous custody order and that affects the best

---

[10] § 43-2923.

[11] See, *Matson v. Matson*, 175 Neb. 60, 120 N.W.2d 364 (1963); *Grange v. Grange*, 15 Neb. App. 297, 725 N.W.2d 853 (2006).

[12] *Smith-Helstrom v. Yonker*, 253 Neb. 189, 569 N.W.2d 243 (1997); *Olander v. McPhillips*, 28 Neb. App. 559, 947 N.W.2d 578 (2020).

[13] *Eric H. v. Ashley H.*, 302 Neb. 786, 925 N.W.2d 81 (2019).

interests of the child.[14] Second, the party seeking modification must prove that changing the child's custody is in the child's best interests.[15]

[8] We have explained that proof of a change of circumstances is not an optional element to a modification proceeding.[16] Proof of a material change of circumstances is the threshold inquiry in a proceeding on a complaint to modify, because issues determined in the prior custody order are deemed preclusive in the absence of proof of new facts and circumstances.[17] Furthermore, limiting custody changes to material changes in circumstances avoids extensive and repetitive litigation and unnecessary, potentially harmful fluctuations in the child's life.[18] A custody order will not be modified absent proof of new facts and circumstances arising since it was entered.[19]

This is the governing legal standard for a request for modification of custody in Nebraska. The foreign decree governing custody and parenting time for the child provides that in the event Glen and Meaghann are unable to reach an agreement through the dispute resolution process set forth in the decree, including agreement related to modifications in the physical custody schedule, "either party may petition a court of competent jurisdiction for relief, provided however that any court of competent jurisdiction shall apply the then-governing legal standard to such a request for modification of custody."

[9] A decree is a judgment, and once a decree for dissolution becomes final, its meaning, including the settlement agreement incorporated therein, is determined as a matter of law from the four corners of the decree itself.[20] It is inherent

---

[14] *Id.*

[15] See *id.*

[16] *Id.*

[17] See *id.*

[18] *Id.*

[19] *Id.*

[20] *Bayne v. Bayne, supra* note 5.

to a judgment's finality that all are bound by the original language used, and all ought to interpret the language the same way.[21]

[10] Even when our determination involves "interpretation" of the judgment or decree, its meaning is determined, as a matter of law, by its contents.[22] Unlike disputes over the meaning of an ambiguous contract, the parties' subjective interpretations and intentions are wholly irrelevant to a court's declaration, as a matter of law, as to the meaning of an ambiguous decree.[23] The meaning of a decree must be determined from all parts thereof, read in its entirety, and must be construed as a whole so as to give effect to every word and part, if possible, and bring all of its parts into harmony as far as this can be done by fair and reasonable interpretation.[24] Effect must be given to every part thereof, including such effect and consequences that follow the necessary legal implication of its terms, although not expressed.[25]

While the agreement that was incorporated into the decree provided in paragraph 4.2 that "[u]pon a material and significant change in circumstance of either party, *or in the needs or interests of* [*the child*], either party *may request* a modification to the physical custody of [the child]," under its plain language, this provision governs only Glen's and Meaghann's obligations to engage in dispute resolution, including mediation, in order to attempt in good faith to reach an agreement on modifying their custody arrangement. (Emphasis supplied.) It did not purport to set forth the legal standard under which a court of law could adjudicate a complaint to modify.

Rather, under paragraph 4.4, if such dispute resolution procedures fail to result in an agreement, modification is a

---

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.*

matter for the courts. In that eventuality, the agreement simply states that "any court of competent jurisdiction shall apply the then-governing legal standard to such a request for modification of custody." The agreement incorporated into the decree did not set forth that the threshold inquiry for modification by the court in such circumstances was a "significant change in circumstance . . . *or* in the needs or interests of [the child]," and it did not describe that only the terms of the agreement incorporated into the decree constitute the "governing legal standard."

Construing the decree as a whole, giving effect to every word and part, the "then-governing legal standard" that the decree refers to does not purport, as the Court of Appeals concluded, to expand a court's ability to modify custody by eliminating the threshold requirement of a material change in circumstances. The provision referring to a significant change in circumstances *or* the needs or interests of the child is merely the standard governing when either party "may request a modification to the physical custody of [the child]," which "the parties will discuss" and will mediate in event such discussion is unfruitful.

We disagree with the Court of Appeals that these provisions setting forth the threshold standard for discussion and mediation should be construed under the decree as the "then-governing legal standard" a court must follow when the parties "petition a court . . . for relief" after other dispute resolution procedures have failed to result in an agreement. The Court of Appeals erred in concluding that the district court was bound by the terms of the decree to allow modification absent a material change in circumstances, so long as the modification was in the child's best interests.

We thus find merit to Meaghann's first assignment of error in her petition for further review. And we thus find no merit to Glen's assignment that the trial court erred in determining he was required to plead and prove a substantial and material change in circumstances. He was required to do so.

That said, we find merit to Glen's assignment on appeal that the district court erred in finding no material change in circumstances, and therefore, we agree with the Court of Appeals' ultimate mandate that the matter be remanded with directions for the district court to consider how to modify the custody provisions of the decree. In our de novo review, we find that Meaghann's unwillingness to permit Glen's parenting time while the child is in daycare and changes in Glen's employment together constitute a material change in circumstances since the entry of the decree.

[11,12] Material change in circumstances eludes precise and concise definition.[26] Generally speaking, a material change in circumstances is the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently.[27]

[13,14] If a permanent, as opposed to temporary, order changing custody is to be made, it should appear to the court that the change of circumstances is more or less permanent or continuous and not merely transitory or temporary.[28] Where the party seeking modification advances multiple reasons for modification, we do not consider whether each individual factor standing alone constitutes a material change; we instead consider all the facts and circumstances raised by the evidence to determine whether there has been a material change.[29]

Several facts and circumstances raised in the complaint to modify have arisen since the decree that were neither actually nor necessarily adjudicated therein. Considering these facts and circumstances together, there has been a material change.

---

[26] *Hall v. Hall, supra* note 6.

[27] *Jones v. Jones*, 305 Neb. 615, 941 N.W.2d 501 (2020); *Eric H. v. Ashley H., supra* note 13.

[28] See *Hoschar v. Hoschar*, 220 Neb. 913, 374 N.W.2d 64 (1985), *disapproved on other grounds, Parker v. Parker*, 234 Neb. 167, 449 N.W.2d 553 (1989).

[29] See *Grange v. Grange, supra* note 11.

First, we find relevant the evidence presented in this case concerning Glen's inability to visit the child while she is in daycare with her maternal grandmother in Meaghann's home. Glen testified that Meaghann had kept him from visiting the child while the child was in daycare outside of preschool; he was simply told the child was "in a safe place." Meaghann's testimony did not specifically refute Glen's testimony in this regard. One parent's denial of the other parent's rights to parenting time may constitute a material change in circumstances.[30]

The decree set forth that Glen was able to visit the child on occasion while she was in daycare, so long as, among other things, the visits did not take place in Meaghann's home. While the decree did not allow Glen to exercise daycare visits at Meaghann's home, the decree did not specifically contemplate that the child would be in daycare at Meaghann's home after July 31, 2016. Further, Glen testified that the decision as to who was to provide daycare and where it was to take place was made by Meaghann without discussing it with him. Moreover, the decree's provision for Glen's visitation "while [the child] is in work-related daycare" does not necessarily exclude the visitation's occurring outside of the daycare facilities.

According to Glen's testimony, Meaghann unilaterally determined that the child would be in preschool—the only place where she had permitted Glen daycare visitation—only two mornings per week at a time Glen was at work. While Meaghann described some discussions with Glen regarding a different preschool, the evidence does not suggest that Glen agreed that the child should be in out-of-home care only two mornings per week.

We recognize that the decree set forth that Glen's daycare visits were to occur "occasion[ally]," but they were nevertheless a significant source of potential parenting time given

---

[30] See *Hibbard v. Hibbard*, 230 Neb. 364, 431 N.W.2d 637 (1988). See, also, e.g., Annot., 102 A.L.R.6th 153 (2015); 40 Causes of Action 2d 241, § 4 (2009).

the limited visitation schedule of every other weekend and every other Wednesday at dinnertime and the absence of any provision for holidays or vacations. We thus find that the current obstacles to visitation with the child while in daycare during Meaghann's work hours is a circumstance occurring after the decree that, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to allocate Glen's parenting time differently.

Second, Glen, due to both his health restrictions resulting from a malignant melanoma diagnosis and his upcoming retirement eligibility, is not subject to the same deployments he was subject to at the time of the decree. Glen also indicated that his new work responsibilities allow him more flexibility than he had previously. From the testimony presented, it does not appear that at the time of the decree, Glen knew what precisely his job would entail in Omaha if he were able to be transferred there; and, regardless, future changes in job stability and flexibility were not contemplated in the decree. The increased stability and availability surrounding Glen's new position are relevant and can be considered in conjunction with the other relevant facts already discussed. A significant change in a party's work schedule is a pertinent factor in determining whether there has been a material change of circumstances that would support a change in parenting time.[31]

In an appeal of an equity action, this court tries the factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court.[32] In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions with respect to the matters at issue.[33] When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial judge heard and observed the

---

[31] See *Grange v. Grange, supra* note 11.

[32] *Goes v. Vogler*, 304 Neb. 848, 937 N.W.2d 190 (2020).

[33] *Rauch v. Rauch, supra* note 7.

witnesses and accepted one version of the facts rather than another.[34] Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion.[35]

In our de novo review, we find there was a material change in circumstances. Glen has demonstrated that he has a more predictable schedule and increased availability since the parties entered into the parenting time agreement. Yet, at the same time, Glen has been unable to fully exercise even the limited parenting time expressly contemplated in the decree.

The facts of this case are similar to those presented in *Grange v. Grange*,[36] wherein the Court of Appeals held that the district court erred by failing to find the mother's change in her work schedule due to the completion of her medical residency, the young child's request to spend more time with the mother, and the father's refusal to voluntarily accede to the mother's request for more parenting time were, when considered together, sufficient to satisfy the mother's burden of demonstrating a material change in circumstances.

Here, the district court did not make specific findings regarding the alleged facts relevant to whether there was a change in circumstances. If findings are not made, this court can make little application of our general rule that in our de novo review, we consider, and may give weight to, the fact that the trial court saw and heard the witnesses.[37] But, to the extent there was a conflict in the evidence, it does not appear that the district court found Meaghann more credible than Glen.

[15,16] Rather, it appears that the court mistakenly found the changes in facts and circumstances alleged in Glen's motion to modify were foreseen by the parties at the time of the

[34] *Id*.

[35] *State on behalf of Jakai C. v. Tiffany M., supra* note 9.

[36] See *Grange v. Grange, supra* note 11.

[37] See *Parker v. Parker, supra* note 28.

original decree and therefore were necessarily included in the decree. A dissolution decree is conclusive in any future action between the parties only as to the facts that were directly in issue and actually or necessarily determined therein.[38] A dissolution decree is not considered conclusive as to questions that might have been, but were not, litigated in the original action.[39] The facts and circumstances discussed above were not necessarily included in the decree. To the extent the court determined otherwise, it abused its discretion.

[17,18] The district court found that it was in the child's best interests to have more parenting time with Glen. Meaghann did not cross-appeal the district court's specific finding that a change in parenting time would be in the child's best interests. An appellee's argument that a lower court's decision should be upheld on grounds specifically rejected below constitutes a request for affirmative relief, and the appellee must cross-appeal in order for that argument to be considered.[40] An appellee may not raise arguments independent of or not responsive to an appellant's assignments of error without cross-appealing because they will fall beyond the scope of the case as presented in the appellant's brief.[41]

Thus, albeit for different reasons, we agree with the Court of Appeals that under our applicable standard of review, the district court abused its discretion, and that the cause should be remanded for the court to reconsider the relief sought by Glen in accordance with the best interests of the child.

---

[38] See, *Buhrmann v. Buhrmann*, 231 Neb. 831, 438 N.W.2d 481 (1989); 27A C.J.S. *Divorce* § 443 (2016). See, also, *DeVaux v. DeVaux*, 245 Neb. 611, 514 N.W.2d 640 (1994) (superseded by statute on other grounds as stated in *Tyler F. v. Sara P.*, 306 Neb. 397, 945 N.W.2d 502 (2020)); *Fichtl v. Fichtl*, 28 Neb. App. 380, 944 N.W.2d 516 (2020).

[39] *Buhrmann v. Buhrmann, supra* note 38; 27A C.J.S., *supra* note 38.

[40] *Wasikowski v. Nebraska Quality Jobs Bd.*, 264 Neb. 403, 648 N.W.2d 756 (2002).

[41] *Workman v. Workman*, 262 Neb. 373, 632 N.W.2d 286 (2001).

Having found in Glen's favor on appeal, we find no merit to Meaghann's assignment in her brief in support of further review that the Court of Appeals erred in granting him attorney fees.

We need not address Glen's remaining assignment asserting that the trial court erred in failing to determine child custody modifications should be determined on the basis of the best interests of minor children and that it should have found the original judgment violated the Parenting Act.

Glen's assertion in his assignments of error section that administrative dismissal of the first complaint to modify was not a decision on the merits preventing him from filing the complaint to modify here at issue is not, in fact, an assignment of error.

Having determined that the decree did not purport to impose a different material change of circumstances standard upon our courts, we do not address Meaghann's assignment of error that a stipulation changing the threshold inquiry for modification would not be binding.

Finally, having reviewed the record in this case de novo and, further, observing that the Court of Appeals did not determine the question of whether there was a material change of circumstances, we find immaterial Meaghann's assignment of error that the Court of Appeals failed to consider the totality of the evidence presented at the hearing on the complaint to modify.

## VI. CONCLUSION

We affirm on different grounds the Court of Appeals' decision reversing the judgment of the district court and remanding the cause with directions.

Affirmed.