IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

HARRIS V. SHELDON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

CADE M. HARRIS, APPELLEE,

V.

SARAH C. SHELDON, APPELLANT.

Filed June 11, 2024.    No. A-23-639.

Appeal from the District Court for Loup County: MARK D. KOZISEK, Judge. Affirmed.

Loralea L. Frank and Nathan P. Husak, of Bruner, Frank, Schumacher, Husak & Simpson, L.L.C., for appellant.

Christopher P. Wickham, of Sennett, Duncan, Jenkins & Wickham, P.C., L.L.O., for appellee.

MOORE, ARTERBURN, and WELCH, Judges.

MOORE, Judge.

### INTRODUCTION

Sarah C. Sheldon appeals from an order of the district court for Loup County denying her request to modify a custody order and parenting plan. We conclude that Sheldon failed to show a material change in circumstances to warrant modification. Therefore, we affirm.

### STATEMENT OF FACTS

*Procedural Background.*

Sheldon and Cade M. Harris were married in 2019 and together share one child, Colten, born in 2017. The district court entered a divorce decree on February 9, 2022, pursuant to the parties' settlement agreement. The parenting plan attached to the decree provides that the parties would have joint physical custody and split legal custody, with Harris having final decisionmaking

- 1 -

authority regarding educational, religious, and legal matters, and with Sheldon having final decisionmaking authority regarding medical treatment. In addition, the parenting plan specifically provided that Colten would attend school in either the Loup County or Burwell school districts. The parenting plan detailed a two-two-three rotation in parenting time with Colten. At the time of the divorce decree, both parties were residing in Taylor, Nebraska.

Although not included in our record on appeal, the district court's order in this case makes reference to a complaint to modify filed by Harris on May 27, 2022. The complaint apparently alleged that Sheldon had changed her residence, having moved over 2 hours away from Taylor, and was no longer living in the Loup County or Burwell school districts. Harris requested that he be granted sole physical custody of Colten. Sheldon did not file an answer and after a change in attorneys, Harris dismissed the complaint to modify in December 2022. We note that Harris' testimony at trial was generally consistent with the district court's recitation of his filings.

On January 5, 2023, Sheldon filed a complaint to modify. The complaint alleged that a material change in circumstances existed as Sheldon desired and had intentions of relocating outside of Loup County; the current parenting plan would no longer work based on Sheldon's desire and intention to relocate; Harris objected to the move and to any modification of the parenting plan; Sheldon had secured new employment offering her a higher wage and increased benefits; Sheldon desired to reside with her significant other and Colten in a two-parent home; the move would improve the housing and living situation of Colten; the educational opportunities of Colten would be enhanced by the move; Sheldon's partner and Colten have a loving and bonded relationship; and the relationship between the parties was tense as a result of the request to move and would likely increase as litigation commenced. The complaint also alleged that it was in Colten's best interests to move with Sheldon.

Harris filed an amended answer and counterclaim for modification. The counterclaim alleged that Sheldon had already relocated outside of Loup County and spent her parenting time with Colten in Loup County, and that the current parenting plan would no longer work due to Sheldon's relocation. The counterclaim also alleged that Harris was opposed to Colten relocating with Sheldon, that it would not allow Colten greater opportunities, and that Colten had a strong family support system within Loup County. The counterclaim requested that Harris be awarded primary physical custody subject to Sheldon's reasonable visitation and alleged that the modification would be in Colten's best interests.

*Evidence at Trial.*

Trial on the matter was held on July 13, 2023. The following evidence was adduced.

Colten has lived in Taylor his entire life and Harris continues to reside in the family home he shared with Sheldon and Colten. While living in Taylor, Colten has participated in wrestling, t-ball, and swimming lessons. He has attended preschool there for 2 years and is involved in Kids Klub. Colten has many friends in the Taylor area. Sheldon's parents reside in Taylor as well as Harris' father, aunt, uncle, and sister. Harris' mother lives in Ord, Nebraska, roughly 30 miles from Taylor. The record shows that many of these family members have assisted both Harris and Sheldon in taking care of Colten, including providing transportation and assistance while the parents were working.

Harris owns a seed sale business; he does custom planting, drilling, and haying for people; and he farms and ranches. Colten frequently accompanies Harris to the family farm and enjoys riding a four-wheeler and seeing the cattle and tractors. Harris testified that Colten wants to be with Harris at all times and that the two have a close bond. Harris occasionally takes Colten to daycare during the school year; he estimated that occurred maybe 15 to 20 times during the year.

Sheldon testified that in April 2022, roughly 2 months after entering into the settlement agreement, she told Harris that she wanted to move from Taylor to Sutherland, Nebraska. The travel time between Taylor and Sutherland is roughly 2 hours. In a text message from Harris to Sheldon he stated: "I'm ok with you having Colten when you move. I think I still have to think about it [sic] it's just the hardest decision I've ever made . . ." Sheldon believed that Harris had agreed to her move, and she began the process of enrolling Colten in the Sutherland school district and applying for jobs. Sheldon provided Harris information regarding a tour of the Sutherland school where Colten would attend and Harris confirmed the tour's details, though Harris did not ultimately attend the tour with Sheldon. In late April 2022, Sheldon completed paperwork to enroll Colten in the Sutherland school.

Harris admitted that he sent the text noted above about being okay with Sheldon's move but emphasized the portion about still needing to think about it. He testified that it was a very emotional time and that the next day he indicated in a text message that he was not okay with the move. Harris also said that he told Sheldon in person and over the phone about his decision before he filed his initial complaint for modification.

Sheldon stated that she did not learn that Harris objected to her move until he filed his complaint for modification roughly a month later in late May 2022. The day after Harris dismissed his complaint to modify in January 2023, Sheldon filed her own complaint to modify requesting to move with Colten to Sutherland.

Sheldon intended to move to Sutherland in order to reside with her boyfriend, whom she has been dating since October 2021, during the time of the dissolution proceedings. Together they were expecting a baby in October 2023 and intended to purchase a bigger house, but they were not engaged to be married at the time of trial. At the time of trial, Sheldon lived in a two-bedroom home in Taylor that was owned by her parents, which she described as too small for her growing family. She also had issues with the heat being inconsistent during the winter. Sheldon was unaware of any three-bedroom rentals available in Taylor.

Sheldon described the relationship between Colten and her boyfriend as loving and positive, and noted that Colten calls the boyfriend either by his first name or "dad," which he chose to do on his own. Together the boyfriend and Colten go hunting, fishing, and dirt biking.

At the time of trial, Sheldon was employed as a special education para in the Sargent public school district earning $15.50 an hour. Sheldon had received a job offer for a para position from the Sutherland public school district for $19.50 an hour, to start in August 2023. With her new position Sheldon would also be able to enroll Colten in her employer health insurance so that Colten would no longer need to be covered by Medicaid.

Sheldon was also in the process of pursuing a teaching degree and was taking online classes while working full-time. At some point she would be required to attend in-person classes. By moving to Sutherland, Sheldon would be able to attend classes at Mid-Plains Community College on the North Platte, Nebraska, campus, roughly 20 miles away from Sutherland. Sheldon testified

that it would be "extremely hard" for her to finish her teaching degree in Taylor as she would have to drive 110 miles to attend the in-person classes in North Platte. In order to complete her teaching degree, Sheldon would further be required to attend a semester in Kearney followed by student teaching.

Sheldon testified that Colten has friends in the Sutherland area and that she planned to sign Colten up for sports and other activities. Sheldon also believed that Colten would do well in his prospective school in Sutherland, and that the Sutherland school district offered Colten more educational opportunities and a greater variety of classes. The class size in Sutherland would be 20-25 children compared to a class of 7 children in Taylor, which Sheldon believed was advantageous to Colten.

The boyfriend testified that he owns a concrete business in North Platte and would be unable to operate his business in a town as small as Taylor. The boyfriend's parents, grandparents, and sister reside in the Sutherland area, along with friends of Sheldon's. Sheldon did not believe that a move to Sutherland would diminish Colten's relationship with any of his family members who reside in Taylor.

In addition to her request for physical custody, Sheldon also requested sole legal custody. Sheldon did not believe that she and Harris were able to make joint legal decisions regarding Colten. Sheldon described an incident in November 2022, when Colten had pinkeye and she took him to the doctor. The doctor prescribed eye drops to be taken until the pinkeye symptoms were gone. According to Sheldon, Harris did not properly administer his medication. When Harris returned Colten to Sheldon, Colten's eyes were "matted shut." Sheldon indicated Harris told her he had called the doctor who apparently had told him that pinkeye was no longer contagious after the first dose of the eye drops. Harris also asked the doctor whether Colten could be given pills instead of the eye drops. Text messages between Sheldon and Harris entered into evidence were consistent with Sheldon's testimony.

Sheldon described another incident in January 2023, when Sheldon asked Harris through text message to take Colten to a pediatric dentist appointment in North Platte and then to drop Colten off with her boyfriend, as Sheldon would still be at work following the dentist appointment. Harris did not respond to Sheldon's text messages and Sheldon ultimately had her boyfriend take Colten to the dentist. Harris testified that he did not want to leave Colten with the boyfriend after the dental appointment because Harris recalled that Sheldon could not pick Colten up until the next day, leaving Colten to spend the night with the boyfriend without Sheldon there.

Sheldon testified that Harris' parenting was "very inconsistent," and that Colten was not subject to rules while in Harris' care. Both of Sheldon's parents testified to concerns about Harris' parenting, including inconsistent discipline, difficulty with parenting time exchanges, and bringing Colten to a baseball game with a dirty face and hands. Sheldon had concerns that Harris was not spending sufficient time with Colten during his designated parenting time. Sheldon noted that she is available to spend time with Colten during the periods Harris is not. Harris testified that he tried to be consistent in how he disciplined Colten but conceded that when Colten was tired, he could be demanding.

Sheldon also described Colten throwing tantrums when Harris would drop Colten off at preschool and during exchanges with Sheldon. At preschool, either the teacher would help to calm Colten or Harris would take Colten over to Sheldon's home. Sheldon was frustrated by the amount

of preschool that Colten had missed and that Harris was not "even attempting" to take Colten to preschool when he would throw a tantrum. Sheldon described that Harris likewise did little to help with Colten's tantrums during drop offs and parenting transitions. Sheldon enrolled Colten in therapy in June 2022 to help him manage his excessive tantrums.

Harris agreed there were times when Colten did not want to leave Harris and go to preschool, but Harris indicated that Colten had only missed 1 day of preschool because of this behavior. Harris testified that the separation and parenting time exchanges were initially difficult for Colten, but that Colten's difficulties at exchanges have lessened as he has gotten used to the process. Harris believes that continued joint custody while living in Taylor would be in Colten's best interests.

Sheldon testified that she had the ability to co-parent but was "worried" about Harris' ability and willingness to co-parent. During a text message exchange related to Colten's preschool attendance, Harris sent Sheldon a text message stating, "No such thing as co parenting[.]" Harris conceded to sending the text message but stated that it was a poor choice of words and that he does believe that he can co-parent effectively with Sheldon.

Sheldon also testified that Colten was aware of Sheldon's desire to move to Sutherland and believed that Harris had made comments about the case to Colten. Harris acknowledged that once when Colten asked why he and Sheldon were fighting, he told Colten that they were fighting because "Mom wants to move and I don't want . . . you to move." Harris had also told Colten that if he moves with Sheldon, Harris will see him less often.

Sheldon testified that a move to Sutherland would provide Colten with educational opportunities, a two-parent home, more time with his new sibling, and increased social activities, due to Sutherland's proximity to North Platte. However, if the district court did not grant Sheldon primary custody of Colten, she would not move to Sutherland and believed that it would be in Colten's best interests that she and Harris share equal parenting time. She offered a proposed parenting plan that would provide her with legal and physical custody and Harris with parenting time every other weekend. The proposed parenting plan would also grant Harris 8 weeks of consecutive parenting time in the summer, with Sheldon having parenting time every other weekend during the 8 weeks.

Both parties agreed that the two-two-three parenting time arrangement and frequent exchanges prevented the establishment of a routine for Colten. The parties agreed that if Sheldon was not granted primary custody, they would implement a weekly rotation during the school year when Colten began kindergarten in the fall of 2023.

Multiple members of both Sheldon's and Harris' families testified to the fitness of the parents and their love for Colten. In a letter from Colten's counselor that was received in evidence, the counselor opined that Colten needs both his father and mother in his life and expressed the hope that they could co-parent Colten.

*Modification Order.*

In an order entered on July 19, 2023, the district court denied Sheldon's complaint to modify. The court found that Sheldon "equates a material change with the best interest factors to be considered only after a material change has been established." The court noted that Sheldon's complaint was focused on the reasons she should be allowed to move and not what material

changes had taken place since the decree was entered. In considering the testimony at trial, the court concluded that the material changes Sheldon relied upon to support her effort to modify were that she had started a new relationship with her boyfriend, was pregnant with their child, and wanted to live with him in Sutherland. The court found that none of these facts would have persuaded the court to decree differently and that Sheldon had failed to meet her burden to establish that a material change in circumstances had occurred since the decree had been entered.

For the sake of completeness, the district court went on to address Colten's best interests relative to Sheldon's request to modify. It found that an award of sole custody to Sheldon would not be in Colten's best interests, as it would reduce Harris' parenting time to every other weekend and deprive Colten of being able to interact with his extended family in Taylor on a regular basis.

Finally, based upon the parties' agreement that the two-two-three alternating parenting time schedule was burdensome, the court ordered a weekly parenting time schedule to allow for more stability.

Sheldon appeals.

ASSIGNMENTS OF ERROR

Sheldon assigns that the district court erred by (1) failing to find a material change in circumstances existed and (2) failing to award Sheldon sole custody.

STANDARD OF REVIEW

Modification of a judgment or decree relating to child custody, visitation, or support is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and will be affirmed absent an abuse of discretion. *State on behalf of Daphnie F. v. Christina C.*, 310 Neb. 638, 967 N.W.2d 690 (2021). An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id*.

ANALYSIS

*Material Change in Circumstances.*

Sheldon first assigns that the district court abused its discretion by failing to find a material change in circumstances existed. Sheldon argues that she wants to live in Sutherland with her boyfriend and their baby and that this living arrangement would allow Colten to live with his half-sibling in a two-parent household. She also argues that a move to Sutherland would enhance Sheldon's professional and educational opportunities. Finally, Sheldon argues that she has had challenges co-parenting with Harris, that Harris did not personally exercise all of his parenting time but allowed Colton to spend some of his parenting time with extended family, and that Harris would still be able to maintain a meaningful relationship with Colten despite the move. Sheldon contends that the district court solely focused on her relationship with her boyfriend and their pregnancy and should have instead considered all of the argued factors collectively.

Ordinarily, custody and parenting time of a minor child will not be modified unless there has been a material change in circumstances showing that the best interests of the child require modification. *Lindblad v. Lindblad*, 309 Neb. 776, 962 N.W.2d 545 (2021). Modifying a custody or parenting time order requires two steps of proof. *Id*. First, the party seeking modification must

show by a preponderance of the evidence a material change in circumstances that has occurred after the entry of the previous custody order and that affects the best interests of the child. *Id*. Second, the party seeking modification must prove that changing the child's custody or parenting time is in the child's best interests. *Id*.

Generally speaking, a material change in circumstances is the occurrence of something which, had it been known to the dissolution court at the time of the initial decree or prior modification, would have persuaded the court to decree differently. *Id*. Proof of a material change in circumstances is the threshold inquiry in a proceeding on a complaint to modify, because issues determined in the prior custody order are deemed preclusive in the absence of proof of new facts and circumstances. *Id*. The rationale for limiting modifications of custody and parenting time to only those necessitated by a material change in circumstances is to avoid extensive and repetitive litigation and unnecessary, potentially harmful fluctuations in the child's life. See *id*. Simply put, a custody or parenting time order will not be modified absent proof of new facts and circumstances arising since the order was entered that affect the best interests of the child. See *id*.

Sheldon analogizes the case at issue to *Weaver v. Weaver*, 308 Neb. 373, 954 N.W.2d 619 (2021) and *Grange v. Grange*, 15 Neb. App. 297, 725 N.W.2d 853 (2006), where Nebraska appellate courts found a material change in circumstances. In *Weaver v. Weaver, supra*, the Nebraska Supreme Court determined the father had demonstrated that due to health restrictions and upcoming retirement eligibility, he had a more predictable schedule and increased availability since the parties entered into the parenting time agreement. Further, the father had been unable to fully exercise even the limited parenting time expressly contemplated in the decree due to the mother placing the child in daycare during mornings that conflicted with the father's work schedule. Under the Supreme Court's de novo review it found that there had been a material change in circumstances with respect to the father's parenting time.

In *Grange v. Grange, supra*, we held that the district court erred by failing to find the mother's work schedule change due to the completion of her medical residency, the young child's request to spend more time with the mother, and the father's refusal to voluntarily accede to the mother's request for more parenting time were, when considered together, were sufficient to satisfy the mother's burden of demonstrating a material change in circumstances with regard to her parenting time.

We do not find these cases to be factually applicable to the case at issue. Neither case involved a modification from joint physical custody to sole custody in one parent; rather, they primarily involved a modification of parenting time. Further, the cases implicitly acknowledged that it benefits children to have as much time as possible with both parents.

Where the party seeking modification advances multiple reasons for modification, Nebraska appellate courts do not consider whether each individual factor standing alone constitutes a material change; we instead consider all the facts and circumstances raised by the evidence to determine whether there has been a material change. See *Weaver v. Weaver*, 308 Neb. 373, 954 N.W.2d 619 (2021). When reviewing all of the facts and circumstances advanced by Sheldon in support of her request to modify physical custody, we conclude that she failed to show a material change in circumstances.

When the decree of dissolution was entered, both Sheldon and Harris resided in Taylor, though Sheldon was already in a relationship with her boyfriend who lives in Sutherland. Sheldon

agreed at trial that she believed the joint custody arrangement, along with the provision regarding Colten's school, were in Colten's best interest at the time she entered into the settlement agreement. Although Sheldon did not file her complaint for modification until January 2023, she approached Harris regarding her desire to move with Colten to Sutherland in April 2022, less than 3 months after the district court's entry of the decree.

Sheldon points to no cases wherein remarriage or a serious relationship and later born children, without more, was found to be sufficient to constitute a material change in circumstances warranting modification of custody. See, e.g., *State on behalf of Savannah E. & Catilyn E. v. Kyle E.*, 21 Neb. App. 409, 838 N.W.2d 351 (2013) (holding that remarriage and subsequent separation and divorce proceedings involving mother, together with her inability to maintain employment, her several criminal convictions, and children's poor performance in school, constituted material change in circumstances). In its order denying Sheldon's complaint to modify, the district court explicitly found that Sheldon's relationship and resulting pregnancy with her boyfriend in Sutherland were not occurrences which, had they been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently. We agree.

Given all of the facts adduced in this case, we don't believe that Sheldon's alleged enhanced professional and educational opportunities amounted to material changes not contemplated at the time of the decree or to facts sufficient to warrant a modification to the joint custody agreed to by the parties. We are likewise not persuaded that living in a bigger community and attending a somewhat larger school support finding a material change in circumstances warranting modifying joint custody to sole physical custody with Sheldon.

Finally, though Sheldon testified to co-parenting frustrations with Harris, their relationship has not deteriorated to the extent that it would create a material change in circumstances. The incidents regarding Harris's alleged failure to give Colten his eye drops and not responding to Sheldon's text messages about Colten's dentist appointment appear to be isolated incidents. Though Sheldon testified that Harris did little to manage Colten's tantrums at preschool drop off and parenting time exchanges, Harris' testimony disputes this, and there was evidence that Colten's tantrums have improved since starting therapy and as he adjusted to transitioning. Sheldon argues that Harris does not fully exercise his parenting time, however, there was no evidence adduced at trial to support this. And we note that both parties allowed Colton to spend time with their extended families from time to time. Sheldon's alternative request to the district court, that the parties continue to share equal parenting time in a weekly rotation, suggests that she views Harris as a fit parent and that she implicitly concedes that equal time with his parents is in Colten's best interest.

Upon our de novo review of the record in this case, we find no abuse of discretion in the district court's conclusion that the evidence adduced at the modification trial did not establish a material change in circumstances following the entry of the decree that would warrant a change in custody.

*Custody Request.*

Sheldon next assigns that the district court erred in failing to award her sole physical custody. Sheldon argues that she is a fit parent and that such an award is in Colten's best interests.

Because we find that Sheldon's alleged change in circumstances was not material, we need not address whether it would be in the child's best interests to modify the custody order. The proof of a material change in circumstances is the threshold inquiry in a proceeding on a complaint to modify. *Weaver v. Weaver*, 308 Neb. 373, 954 N.W.2d 619 (2021). A custody order will not be modified absent proof of new facts and circumstances arising since it was entered. *Id*.

CONCLUSION

For the foregoing reasons, we conclude that Sheldon failed to show a material change in circumstances occurred to necessitate a modification of child custody. Therefore, we affirm.

AFFIRMED.

WELCH, Judge, concurring.

I write separately from my colleagues because, although I agree with the result of the case, I differ in my reasoning. My departure arises from the majority's determination that Sheldon's expressed desire and intention to move to Sutherland, Nebraska, did not constitute a material change in circumstances. In my view, it did.

Following the entry of the February 2022 dissolution decree in which the district court awarded the parties joint physical custody of Colten, Sheldon became pregnant and expressed her desire to move to Sutherland to live with the father of her unborn child. Although Sheldon and the father of her unborn child were dating by the time of the initial dissolution decree, Sheldon was not pregnant at that time which, at a minimum, presents a significant difference in fact.

The Nebraska Supreme Court has never applied its interstate relocation jurisprudence in connection with intrastate moves. As our court stated in *Bohnet v. Bohnet*, 22 Neb. App. 846, 855, 862 N.W.2d 99, 106 (2015):

> Until directed otherwise, the current law applicable to requests for modification of custody and/or parenting time that arise due to an intrastate move of a custodial parent would fall under the propositions of law generally found in custody modification cases, that being that ordinarily, custody of a minor child will not be modified unless there has been a material change of circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. *Brown v. Brown,* 260 Neb. 954, 621 N.W.2d 70 (2000). Further, the party seeking modification of a decree of dissolution bears the burden of showing a material change of circumstances affecting the best interests of a child. *Id*. Whether considering a modification of custody or a proposed removal from the state, the best interests of the children are the paramount considerations in our determination. *Id*.

And, as stated in the majority opinion, a material change in circumstances is the occurrence of something which, had it been known to the trial court at the time of the initial dissolution decree or prior modification, would have persuaded the court to decree differently. See *Lindblad v. Lindblad*, 309 Neb. 776, 962 N.W.2d 545 (2021).

Although Sheldon was not required to obtain permission of the court to relocate within the state, she sought a modification of custody before moving in recognition of the distance of the move and the strain it would place on a joint custody arrangement. In furtherance of her request,

she indicated that, due to her pregnancy, the move would provide stability for her and her new child while also providing the benefit of a higher paying job with better benefits and the ability to complete her teaching degree. She explained that the father of her unborn child owned a business nearby in North Platte which militated against him moving to be closer to her. Although these facts provided legitimate reasons to relocate, that is not the standard for an intrastate move. The standard remains whether these factors constitute a material change in circumstances affecting the minor child's best interests and whether it is in the minor child's best interests to modify custody to accommodate the move.

This is where I diverge from my colleagues. In the February 2022 dissolution decree, the court awarded the parties joint custody based, in part, on their willingness to continue to raise and educate Colten together in Taylor, Nebraska. But in my opinion, had Sheldon been pregnant at the time of the original dissolution decree and expressed an intention to move to Sutherland for the reasons articulated above, I do not believe the court would have awarded the parties joint physical custody due to the distance between Taylor and Sutherland. As such, I see these circumstances as constituting a material change in circumstances that would affect Colten's best interests as it would profoundly impact his living arrangements, school and relationship with Harris.

The majority indicates that "Sheldon points to no cases wherein remarriage or a serious relationship and later born children, without more, was found to be sufficient to constitute a material change in circumstances warranting modification of custody." But in my view, the question of whether Sheldon's expressed desire to move 2 hours away constitutes a material change in circumstances must be considered independently of whether it warrants a change in custody under the best interests standard, and the "more" here is the pregnancy and Sheldon's desire to move to be with her unborn child's father who lives more than 2 hours away in a town where he owns his own business so as to provide greater stability for that child. That move would most certainly affect Colten's best interests. The question then becomes whether it would be in Colten's best interests for Sheldon and Colten to move nearly 2 hours away from Harris who has joint custody with Sheldon.

Although this proposed move might be in the best interests of Sheldon and her new child, it does not mean the move is in the best interests of Colten, who would need to uproot from Harris and his present lifestyle to accommodate Sheldon and her new child. As the Nebraska Supreme Court noted in *Brown v. Brown*, 260 Neb. 954, 962, 621 N.W.2d 70, 78 (2000), "[A]s a practical matter, the existence of a joint physical custody relationship is likely to make it more difficult for the relocating parent to meet these burdens." Although that statement was made in the context of our interstate relocation jurisprudence, I believe it provides parallel guidance in connection with an intrastate move of significant distance. So, because I agree with the district court's parallel analysis that the proposed move was not in Colten's best interests, I would affirm the district court albeit on a best interests analysis.