IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

HEREFORD-HOGAN V. BOWEN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JESSICA R. HEREFORD-HOGAN, FORMERLY KNOWN AS JESSICA R. BOWEN, APPELLANT,

V.

AARON M. BOWEN, APPELLEE.

Filed December 21, 2021.    No. A-21-212.

Appeal from the District Court for Lancaster County: ANDREW R. JACOBSEN, Judge. Affirmed.

Matt Catlett, of Law Office of Matt Catlett, for appellant.

Joel Bacon, of Keating, O'Gara, Nedved & Peter, P.C., L.L.O., for appellee.

PIRTLE, Chief Judge, and RIEDMANN and WELCH, Judges.

PIRTLE, Chief Judge.

## I. INTRODUCTION

Jessica R. Hereford-Hogan, formerly known as Jessica R. Bowen, appeals from an order of the Lancaster County District Court modifying provisions of a parenting plan agreement between Jessica and her former husband, Aaron M. Bowen. Under the order for modification, Jessica and Aaron retained joint legal and physical custody of their minor child subject to the provisions of a modified parenting plan. For the reasons that follow, we affirm.

## II. BACKGROUND

### 1. PROCEDURAL HISTORY

Jessica and Aaron were married in October 2004. Jessica and Aaron had one child, Holly, born in 2008. In January 2013, the Lancaster County District Court entered a "Decree of Dissolution of Marriage" awarding Jessica and Aaron joint legal and physical custody of Holly.

- 1 -

The court ordered that the parties shall have joint legal and physical custody "subject to each parent's rights of parenting time as specifically set forth in the attached and incorporated parenting plan." The court also ordered "[t]hat pursuant to the Nebraska Child Support Guidelines and the Nebraska Joint Custody Child Support worksheet attached and incorporated by reference herein, [Aaron] shall pay child support in the amount of $246.00 per month[.]" Immediately following the 2013 decree in the transcript is the referenced child support worksheet, however, it appears the parenting plan was not actually attached to the decree and does not appear in the appellate record.

In December 2015, Aaron filed a complaint to modify the 2013 decree seeking sole legal and physical custody and a recalculation of his child support obligation. Jessica filed an answer and counterclaim denying the pertinent allegations in Aaron's complaint and seeking a modification of the parenting plan incorporated into the 2013 decree. On July 26, 2016, the parties filed a "Joint Stipulation for Modification of Decree." Therein, the parties agreed to retain joint legal and physical custody of Holly, "subject to the terms of the Parenting Plan, attached hereto and incorporated herein by this reference as Attachment 1." The parties further agreed to reduce Aaron's child support obligation from $246 per month to $167 per month pursuant to an attached child support worksheet. Immediately following the joint stipulation in the second supplemental transcript are copies of the referenced parenting plan and child support worksheet.

The parenting plan set forth an "8/6" parenting time schedule during the school year, under which Aaron had physical custody of Holly for 8 consecutive days followed by Jessica having physical custody for 6 consecutive days. While the parenting plan emphasized the importance of reaching consensus in parental decisionmaking, it also provided that "[i]n the event of an impasse related to the child's mental health service provider(s) [Aaron] shall have the final voice[.]" Further, "[i]n the event of an impasse related to the child's physical health service provider(s) . . . [Jessica] shall have the final voice." The plan also provided that "[i]t is agreed to, and understood by, [sic] both parents that either may enroll the minor child into an activity, but that the other parent has no obligation to attend that activity, or to take the minor child to that activity, during the other parent's parenting time." The parenting plan further provided that "the parties shall attempt to mediate their disagreements by talking to a third person [who] need not be formally trained in mediation, although the parties are encouraged to talk to a trained mediator if possible." However, the plan also provided that this latter provision "shall not prevent either parent from utilizing the court in the event of an emergency or in the event the other parent is uncooperative[.]"

On July 27, 2016, the court entered an order approving the joint stipulation and parenting plan. The court found that "the parties have entered into a written Joint Stipulation for Modification of Decree, which does not modify child custody, but incorporates a new Parenting Plan by reference." The court further found that "[t]he Parenting Plan shall supersede the Parenting Plan previously entered." The court's order was prepared and submitted by Aaron's attorney, and Jessica's attorney, who also represented Jessica throughout the present modification proceedings and appeal, approved the order "as to form and content."

### 2. PRESENT MODIFICATION PROCEEDINGS

In August 2019, Jessica filed a complaint for modification of the 2016 decree and parenting plan, seeking sole legal and physical custody of Holly. Jessica's complaint alleged a series of events occurring after the 2016 decree that, in her view, amounted to a material change in

circumstances justifying modification. Jessica raised some specific grievances such as Aaron's "routine failure or refusal" to give Jessica advance notice of circumstances in which Aaron would be separated from Holly for "more than one day and night during his parenting time[.]" Jessica also described what she characterized as "the unilateral enrollment by [Aaron] of Holly in excessive amounts of extracurricular activities, including activities that require participation during the parenting time of [Jessica]." Jessica also raised more general concerns regarding the "deterioration" of her and Aaron's relationship, "such that it is impossible for them to make joint decisions concerning Holly's health, education, and general welfare[.]" Jessica raised several examples of this deterioration, including Aaron's "consistent efforts to suppress Holly's desire to have contact with [Jessica] during [Aaron's] parenting time" and Aaron's failure to provide adequate notice of Holly's absence from school during Aaron's parenting time.

Ultimately, Jessica requested she be awarded "exclusive legal and physical custody of Holly[.]" Jessica also requested that the court "adopt a new parenting plan . . . [which] includes a 'right of first refusal'" under which both parties have the opportunity for physical custody of Holly upon the other parent's separation from Holly lasting at least 24 hours during their scheduled parenting time. Finally, Jessica requested the court to award her attorney fees and costs.

Aaron filed an answer and counterclaim denying the pertinent allegations in Jessica's complaint and seeking sole physical and legal custody of Holly. Aaron also alleged a number of circumstances amounting to a material change of circumstances justifying modification. Aaron's primary concerns revolved around his belief that Jessica and Holly's relationship "has become enmeshed and unhealthy." Aaron alleged that Holly "experiences mental health issues as the result of the parental relationship with [Jessica.]" Aaron ultimately requested sole physical and legal custody of Holly. Aaron also requested that the court recalculate his child support obligation in accordance with the Nebraska Child Support Guidelines.

Prior to trial, a dispute arose regarding Holly's continued participation in counseling with one Dr. Schemm. On January 13, 2020, Aaron filed a motion requesting a court order "requiring mental health therapy for the minor child." On January 17, the court held a hearing on the matter, and each party submitted affidavits in support of their positions. The record demonstrates that Holly was diagnosed with ADHD and an anxiety disorder, and that she had been participating in counseling with Schemm since January 2016. In a letter to Jessica's attorney regarding a discovery request, Schemm stated that Holly "experiences a great deal of anxiety about the different familial dynamics between and within her parents' homes." Schemm added that "[a] large part of the therapeutic relationship has focused on providing a safe and neutral location within which Holly can express herself without judgement [sic], learn to manage symptoms of anxiety, and develop healthy boundaries within the family units."

While Aaron and Jessica initially agreed to commence counseling with Schemm, Aaron attested that Jessica had become "increasingly uncooperative" over time, culminating in December 2019 when Jessica informed Aaron that she no longer consented to Holly "undergoing any mental health or behavioral health counseling." Aaron responded that "Holly will continue receiving the helpful and needed therapy Dr. Schemm provides[,]" which prompted Jessica to contact Schemm directly and expressly revoke her consent to continued counseling. Thereafter, Jessica instituted a contempt proceeding against Aaron "for enrolling Holly in behavioral or mental health counseling

without my consent." The foregoing prompted Aaron's motion seeking a court order for Holly to continue therapy over Jessica's objection.

Jessica opposed Aaron's motion on the grounds that it was "frivolous and brought for purposes of [harassment]." She characterized the motion as a veiled request for temporary sole legal custody "on the basis that [Aaron] simply does not agree with decisions that I have made as Holly's joint legal custodian." Jessica acknowledged that her and Aaron had "agreed to enroll Holly in counseling with [Schemm]" during the 2016 modification proceedings. Holly continued seeing Schemm roughly once a week until 2019 when Jessica decided she was no longer going to take Holly to see Schemm during her parenting time. Initially, Jessica did not object to Aaron continuing to take Holly to see Schemm during his parenting time. However, as mentioned above, Jessica objected to any continued treatment in December 2019. According to Jessica, counseling was doing more harm than good, and Aaron's purpose for seeking continued counseling was "to make Holly more like the child *he* wants her to be, and to gather information that will 'help' him in litigation against me." After hearing argument and reviewing the affidavits, the court denied Aaron's motion for court-ordered therapy.

Trial on the complaint and counterclaim for modification of the 2016 decree was held in July 2020. Jessica summarized the basis for her complaint as follows:

> Essentially, the co-parenting relationship between myself and Aaron has deteriorated such that there's no meaningful conversations about Holly's welfare. Essentially my experience is that I am bullied and belittled and criticized. . . . I'm threatened with litigation if I do not comply with Aaron's wishes for Holly. . . . The bottom line is that I have no say anymore because I am consistently, systematically ignored by [Aaron] when it comes to decision making regarding our child.

Jessica provided extensive testimony to support her characterization of Aaron as an over-bearing, authoritarian parent who routinely undermines and disregards Jessica's concerns for Holly. For the sake of brevity, we do not discuss all of Jessica's grievances in detail. Rather, we briefly summarize the primary disputes that Jessica highlights on appeal.

### (a) Threats of Litigation

Jessica testified that Aaron often coerced her into agreement by threatening litigation if she refused to cooperate with his wishes. For example, Jessica recalled a dispute between her and Aaron regarding the school which Holly was to attend. The record reflects that Holly attended Holmes Elementary School from kindergarten to fourth grade. Holly then transitioned from Holmes to Beattie Elementary School for fifth grade. Beattie was located a few blocks from Aaron's home, and Jessica testified that "Aaron expressed his desire to have [Holly] go to Beattie . . . largely because . . . it was more convenient to him[.]" Although, Jessica also noted that part of the reason for the change was to get Holly "on track . . . to go to Irving Middle School." Aaron likewise testified that the decision was in large part due to "the reputation of Irving Middle School."

Jessica testified that she and Aaron first discussed this transition during Holly's fourth grade year and agreed that they engaged in "meaningful conversation" ahead of the switch. However, Jessica expressed frustration that Aaron broached the topic "in front of Holly," which

she described as "a typical tactic of Aaron to pressure me and to pressure Holly" by making statements about "parenting matters" in front of Holly. At trial, Jessica indicated that she wanted Holly to stay at Holmes because "Holmes was her school [and] she had a rapport with friends, teachers, principals, administrators, she knew the landscape." In contrast, Aaron denied that he broached the topic in Holly's presence. Moreover, rather than having Holly remain at Holmes, Aaron testified that Jessica's counterproposal was to have Holly enrolled at Randolph Elementary School, which was located directly across the street from Jessica's home.

Jessica testified that she only "acquiesced" to Beattie in response to what she characterized as "an undercurrent . . . of a threat of litigation." Aaron testified that he told Jessica "if we're at an impasse . . . let's talk to someone through mediation and figure out a best path forward for Holly[.]" When pressed, Jessica confirmed that Aaron actually said "mediation," clarifying that she inferred a threat of litigation because "well, okay, next step after mediation, if we don't agree, is litigation." Jessica testified that Aaron "threatened litigation" again in a letter expressing his concerns related to Jessica's refusal to continue taking Holly to Schemm for counseling. Therein, Aaron wrote, "[a]t this point, I am so concerned about Holly's mental health and behaviors in your household specifically, that if you are unwilling to follow through with participation in the treatment of Holly's issues in therapy, I will address it through the court process." Notably, the parenting plan in effect at the time specifically provided for mediation and court involvement in the event of a dispute between the parties.

### (b) Periods of Separation During Aaron's Parenting Time

Jessica testified at length regarding Aaron's failure to notify her of circumstances in which he would be separated from Holly during his parenting time. First, Jessica discussed one occasion in which Holly became ill at school and needed to be picked up, but the school could not get a hold of Aaron or his wife. Jessica later found out that Aaron and his wife were out of town, and Holly had been staying with her paternal grandmother at the time.

Similarly, Jessica testified to an incident in which Holly stayed home sick from school for two consecutive days, but Aaron was out of town, so Holly stayed in the care of Aaron's wife. Jessica testified to another incident in which Holly traveled to Wisconsin with Aaron's wife to visit an ill family member, and Aaron did not accompany them on the trip. With respect to both incidents, Jessica expressed frustration at the lack of adequate notice that Aaron would be separated from Holly for at least 24 hours. Aaron confirmed there were at least 14 occasions since the 2016 decree in which he was separated from Holly for at least 24 hours during his parenting time. However, Aaron emphasized that there was no requirement in the parenting plan that he notify Jessica of such separations, and he indicated his preference to leave Holly with "her stepmother" during these absences.

### (c) Inadequate Consultation Regarding Parental Decisions

Jessica testified to a number of circumstances in which Aaron failed to adequately consult her. First, Jessica testified that Aaron enrolled Holly in a "sex education" program at Planned Parenthood without Jessica's consent. Aaron countered that "sex education is a mischaracterization of the education provided" but confirmed that he did enroll Holly in "programming provided by Planned Parenthood" without Jessica's consent. Jessica further

testified that Aaron contacted one of Holly's teachers without consulting her. Aaron explained that Holly was struggling with "an uncomfortable interaction" she had with another student at an after-school program, so Aaron apprised Holly's teacher of the incident. Aaron confirmed that he did not consult with Jessica prior to contacting the teacher because "[i]t seemed like a fairly minor incident[.]"

Jessica also indicated that Aaron failed to adequately consult her regarding Holly's medical care. Jessica testified to an incident in which Holly was not feeling well while at her home, and her symptoms continued through the transition to Aaron's home. Jessica and Aaron were "regularly messaging" throughout the transition, and Aaron sent Jessica a text message at 7:13 a.m. asking her to call him. Jessica testified that Aaron notified her that he would be calling the doctor's office to schedule an appointment when they opened at 8 a.m. Aaron apparently called the doctor and scheduled an appointment but failed to notify Jessica thereof, so when Jessica asked for an update at 8:36 a.m., Aaron responded that they were already at the doctor's office waiting. Jessica then met them at the doctor's office while Aaron and his wife were consulting with the doctor about how to proceed. Holly was diagnosed with an intestinal impaction and the prescribed treatment was two over-the-counter enemas. Jessica testified that Aaron administered both enemas but complained that he failed to notify her prior to administering the first.

Furthermore, as mentioned above, Jessica expressed great frustration over Aaron engaging in "parental business in Holly's presence[.]" For example, Jessica testified that Aaron often helped Holly carry her trombone to Jessica's car, which Jessica characterized as "a tacit attempt to direct Holly's activities during Jessica's parenting time." Jessica also testified that Aaron has copied Holly's email address on emails regarding Holly's dance and piano lessons. Jessica characterized this practice as a "pressure campaign of Holly needs to do it[.]" In contrast, Aaron testified that he included Holly on the emails because "she's at times afraid to ask her mom if she can participate[.]" He explained that he wanted Holly to have the option to participate and added that it was "never a requirement" that she participate during Jessica's parenting time.

(d) Excessive Extracurricular Activities

Jessica testified to her concern that Holly was "over-scheduled" with extracurricular activities, which included trombone, piano, swimming, 4-H, dance, and sign language. Jessica testified that she was only responsible for enrolling Holly in trombone and piano, and Aaron confirmed that he was responsible for "the lion's share of activities, engagements, sign-ups, enrollment . . . [t]hat's my burden that I take on." However, Jessica testified that Aaron enrolled Holly, without Jessica's consent, in certain activities requiring participation during Jessica's parenting time. For example, Jessica testified that Aaron enrolled Holly in dance classes at Starstruck Academy and then "expected" Jessica to take Holly to classes on her parenting time. However, as mentioned above, Aaron testified that it was never a requirement that Holly participate during Jessica's time. Rather, Aaron indicated his desire was for Holly to see things through to the end and expressed concern regarding the lack of consistency between the two households. Notably, Jessica testified that Aaron offered to take Holly to and from classes during Jessica's parenting time, but Jessica refused on the grounds that "handing [Holly] over to [Aaron] on my parenting time multiple times a week so that he can take her to events that I did not consent to is not my idea of co-parenting."

### (e) Miscellaneous Grievances

Jessica testified to her concern regarding what she characterized as "indoctrination" of certain political beliefs and attitudes while Holly was in Aaron's custody. Aaron flatly denied this accusation. Jessica also testified to "insufficient" phone contact with Holly during Aaron's parenting time. The initial dispute regarding phone contact revolved around Holly calling Jessica from Aaron's vehicle where he could overhear the conversation, but Jessica testified that she expressed her objection to this practice and Aaron honored her wishes. While Jessica indicated that Aaron continued to interfere with phone contact between her and Holly, she also testified that her and Aaron had "come to an understanding that [Holly] will get back to me when it's convenient for [Aaron], and generally that happens[.]"

Jessica also expressed her dissatisfaction with an article, purported to have been written by Holly, which was published in a newsletter of sorts distributed to residents of the "Country Club Neighborhood" where Aaron resides. Jessica testified that she was not notified prior to publication of the article and emphasized that the article "states that Holly lives with her father and stepmother and omits me, entirely." Aaron confirmed that he arranged for the publication without notifying Jessica. However, Aaron emphasized that, under the 2016 decree and parenting plan, he was not required to provide Jessica with notice of "promotional materials that include Holly."

### (f) Aaron's Testimony

While Aaron also identified a "deterioration of coparenting[,]" he testified that this was largely due to Jessica's "regular berating of me as an inept, incompetent, unjust, self-serving parent[.]" Aaron summarily denied that there is any evidence to support Jessica's assertions that he is threatening, belittling, and intimidating toward either Jessica or Holly. With regard to consulting Jessica on parental matters, Aaron testified that he tries his best to consult her ahead of time but noted that "there's a lot of moving parts with things like travel." Aaron testified that he and Jessica primarily communicated through text or email because phone conversations and face-to-face interactions have proved difficult. Indeed, the record reflects numerous emails and text messages through which Aaron and Jessica conferred on parental matters, and Jessica agreed that they engaged in "regular communication."

Aaron's primary concern at trial was for Holly's mental health. Aaron testified to his belief that Holly's relationship with Jessica was "a significant contributing factor" to the mental health issues that were being addressed in counseling with Schemm. Aaron testified to his belief that continued counseling with Schemm was in Holly's best interests, as evidenced by Holly's improvement over the 4 years since counseling with Schemm began. Jessica also acknowledged that Holly's problem behaviors had improved since beginning counseling in 2016, however, Jessica opined that this improvement was solely due to Holly's increased maturity, indicating that Schemm's involvement was "irrelevant[.]"

With regard to Jessica's request for a right of first refusal upon a separation of 24 hours, Aaron testified that such a provision would entail "an unnecessary transition and burden for Holly[.]" Aaron confirmed that he expected separations of one or two nights to continue due to his business travel. He indicated that a right of first refusal may be appropriate upon a separation of 4 or 5 days, but opined that Holly would struggle "bouncing back and forth" under the requested 24-hour rule.

### 3. COURT'S FINAL ORDER FOR MODIFICATION

Following trial, the court entered an order for modification of decree, finding that "neither party has carried their burden to show that a material change in circumstances has occurred warranting modification of physical or legal custody[.]" The court did, however, find a material change of circumstances warranting modification of the parenting plan agreement, in that Holly "is, or has been, enrolled in a multitude of extracurricular activities, most at the request of [Aaron]." The court continued that Aaron "has enrolled [Holly] in those activities and other educational programs without notifying [Jessica]" and "[m]any of those activities occur during [Jessica's] parenting times."

Pursuant to these findings, the court modified the parenting plan in two respects. First, the court modified the provision related to extracurricular activities to provide that either parent can enroll Holly in a maximum of two activities without the consent of the other parent. Second, the court added a provision providing for a "right of first refusal" in the event that either parent is physically separated from Holly for at least 72 hours during their parenting time. The court also ordered a reduction of Aaron's child support obligation pursuant to an attached child support worksheet. The court explicitly ordered that "all other terms and provisions of the [2016 decree] not hereinbefore specifically modified shall remain in full force and effect." Jessica now appeals.

## III. ASSIGNMENTS OF ERROR

Jessica assigns, renumbered, that the district court erred in (1) presupposing the existence of a prior parenting plan, (2) failing to award Jessica sole legal and physical custody of Holly, (3) failing to adopt Jessica's proposed parenting plan, (4) adopting a parenting plan that provided Aaron with greater parenting time, (5) adopting a parenting plan that included a right of first refusal upon a 72-hour period of separation, (6) adopting a parenting plan that gave Aaron the final voice in matters relating to mental health service providers for Holly, (7) reducing Aaron's child support obligation, and (8) failing to award Jessica her costs and attorney fees.

## IV. STANDARD OF REVIEW

In an appeal of an equity action, this court tries the factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court. *Weaver v. Weaver*, 308 Neb. 373, 954 N.W.2d 619 (2021). In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions with respect to the matters at issue. *Id.* When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

Modification of a judgment or decree relating to child custody, visitation, or support is a matter entrusted to the discretion of the trial court, whose order is reviewed by an appellate court de novo on the record and affirmed in the absence of an abuse of the trial court's discretion. *Lindblad v. Lindblad*, 309 Neb. 776, 962 N.W.2d 545 (2021).

## V. ANALYSIS

Jessica first assigns that the district court erred in presupposing the existence of a prior parenting plan. We find this argument to be without merit. The record clearly reflects that the first

parenting plan was initially developed by the parties, adopted by the court, and incorporated by reference into the 2013 decree of dissolution. Jessica emphasizes that the first parenting plan was not actually "attached" to the 2013 decree, and we note that the first parenting plan does not appear in our appellate record.

However, the omission of the first parenting plan is of no consequence to this case because, in July 2016, the court entered an order for modification of the 2013 decree approving a new parenting plan, which "shall supersede the Parenting Plan previously entered." Jessica acknowledges the language in the 2016 modification providing that "the parties have entered into a written Joint Stipulation for Modification of Decree, which does not modify child custody, but incorporates a new Parenting Plan by reference." Brief for appellant at 29. However, Jessica again emphasizes that neither the joint stipulation nor the new parenting plan were actually "attached" to the order on modification, arguing it is thus "unclear to what 'Joint Stipulation for Modification of Decree' or 'Parenting Plan' the district court is referring." *Id*. We disagree.

Unlike the first parenting plan, which does not appear in the record, the record does include a "Joint Stipulation for Modification of Decree," which was signed by both parties and filed with the court in July 2016. This joint stipulation provided that "[t]he parties shall retain joint physical and legal custody of their minor child, [Holly], born in 2008, subject to the terms of the Parenting Plan, attached hereto and incorporated herein by this reference as Attachment 1." The record also includes a parenting plan, which was signed by both parties and filed with the court in July 2016. Thus, contrary to Jessica's assertions otherwise, we find it abundantly clear that the aforementioned documents are the documents to which the court was referring in its final order for modification. Accordingly, Jessica's first assignment of error is without merit.

Jessica next assigns that the district court erred in failing to award her sole legal and physical custody of Holly. Ordinarily, custody and parenting time of a minor child will not be modified unless there has been a material change in circumstances showing that the best interests of the child require modification. *Lindblad v. Lindblad*, 309 Neb. 776, 962 N.W.2d 545 (2021). Modifying a custody or parenting time order requires two steps of proof. *Id.* First, the party seeking modification must show by a preponderance of the evidence a material change in circumstances that has occurred after the entry of the previous custody order and that affects the best interests of the child. *Id.* Second, the party seeking modification must prove that changing the child's custody or parenting time is in the child's best interests. *Id.*

Generally speaking, a material change in circumstances is the occurrence of something which, had it been known to the dissolution court at the time of the initial decree or prior modification, would have persuaded the court to decree differently. *Id.* Proof of a material change in circumstances is the threshold inquiry in a proceeding on a complaint to modify, because the issues determined in the prior custody order are deemed preclusive in the absence of proof of new facts and circumstances. *Weaver v. Weaver*, 308 Neb. 373, 954 N.W.2d 619 (2021). Limiting custody changes to material changes in circumstances avoids extensive and repetitive litigation and unnecessary, potentially harmful fluctuations in the child's life. *Id.*

In this case, the district court found that "neither party has carried their burden to show that a material change in circumstances has occurred warranting modification of physical or legal custody as set forth in the [2016 modification]." Jessica argues that this finding was in error based on her belief that the record demonstrates "Aaron's attitude and conduct are such that it is contrary

to Holly's best interests that he have legal or physical custody." Brief for appellant at 40. In support of this belief, Jessica points to a litany of grievances arising since the 2016 modification, arguing that the totality of the circumstances demonstrates that "cooperation and joint decision-making . . . is unlikely, if not impossible." Brief for appellant at 25, 40.

Aaron counters that "Jessica's brief does not isolate what exactly she claims has materially changed since the 2016 parenting plan that would warrant modifying custody." Brief for appellee at 27. Rather, Aaron argues, Jessica "takes several incidents . . . and stacks them together in an attempt to portray Aaron as an overbearing parent who puts his own desire for 'blue ribbons with big rosettes' ahead of Holly's interests." Brief for appellee at 27-28. Aaron argues to the contrary that the record as a whole demonstrates that "he is a loving parent who think [sic] highly of his daughter and wants to put her in a position to succeed." *Id*. at 29. While Aaron acknowledges that he and Jessica had "difficulties in communicating[,]" he argues that these difficulties were "driven largely by Jessica berating Aaron as an 'inept, incompetent, unjust, [and] self-serving parent.'" *Id*. Aaron also points out that he and Jessica nevertheless engaged in "regular communication" and "have been able to deliberate and successfully negotiate on key issues like education." *Id*.

In resolving the different interpretations of the evidence presented by the parties on appeal, we give weight to the fact that the district court heard and observed the witnesses and concluded that neither party proved a material change in circumstances warranting modification of legal and physical custody. See *Weaver v. Weaver, supra* (when evidence is in conflict, appellate court considers and may give weight to fact that trial judge heard and observed witnesses and accepted one version of facts rather than another). Based on our de novo review of the record, we conclude the district court did not abuse its discretion in failing to award Jessica sole legal and physical custody of Holly. Accordingly, Jessica's second assignment of error is without merit.

Jessica next assigns that the district court erred in failing to adopt her proposed parenting plan. Jessica's proposed parenting plan provided that she shall have sole legal and physical custody. However, as already discussed, the court determined that the evidence did not support a modification of legal and physical custody, and the parties were ordered to "maintain joint physical and legal custody of the minor child." Having so decided, it was not an abuse of discretion for the court to refuse to adopt a proposed parenting plan providing otherwise. Accordingly, Jessica's third assignment of error is without merit.

Jessica next assigns that the district court erred in adopting a parenting plan that provided Aaron with greater parenting time. Jessica emphasizes that the parenting plan adopted by the court "provided Aaron eight days and Jessica six days of parenting time . . . during the 'school year[.]'" Brief for appellant at 40. Indeed, paragraph A of the adopted parenting plan provides that "[d]uring the school year, the parents will follow a '8/6' schedule with the father having the child from Monday after school until the following Tuesday at the commencement of school." In fact, this is precisely the language which the parties negotiated and agreed to prior to the 2016 modification. Jessica does not identify what new facts and circumstances justify modification of this provision.

Jessica makes a similar argument in her sixth assignment of error regarding the provision in the parenting plan that "[i]n the event of an impasse related to mental health service provider(s) for the minor child," Aaron shall have the "final voice[.]" Again, Jessica does not identify what new facts or circumstances justify modification of this provision. Despite having negotiated and

agreed to this provision prior to the 2016 modification, Jessica now argues the provision "is not only arbitrary, it is strange." Brief for appellant at 42.

Absent a material change in circumstances justifying modification, the court was required to retain the language previously negotiated and agreed to by the parties. See *Weaver v. Weaver*, 308 Neb. 373, 954 N.W.2d 619 (2021) (proof of material change in circumstances is threshold inquiry in proceeding on complaint to modify, because issues determined in prior custody order are deemed preclusive in absence of proof of new facts and circumstances). Accordingly, it was not an abuse of discretion for the court to retain the language in the previous parenting plan regarding parenting time and mental health providers, and Jessica's fourth and sixth assignments of error are without merit.

In her fifth assignment of error, Jessica argues the right of first refusal should be triggered upon a parent's separation from Holly for 48 hours as opposed to 72 hours. Jessica asserts "[t]here is simply no legitimate basis for allowing either Aaron or Jessica to withhold notice to the other of a 48-hour separation from Holly during his or her parenting time[.]" Brief for appellant at 41. The record reflects that the 72-hour rule adopted by the court is a compromise between Jessica's request that the right of first refusal be triggered upon a 24-hour separation and Aaron's suggestion that 4 or 5 days would be a more appropriate timeframe. Resolving this dispute with a compromised rule was a matter properly left to the discretion of the district court, and we cannot say it was an abuse of discretion for the court to impose a minimum separation of 72 hours as opposed to 48 hours. Accordingly, Jessica's fifth assignment of error is without merit.

Jessica next assigns that the district court erred in reducing Aaron's child support obligation. Jessica argues that the pleadings in this case failed to adequately raise the issue of a child support modification. That is, "[w]hile each party sought a modification of Holly's physical custody from joint to sole, neither party specifically requested a modification of child support *independent* of a modification of physical custody." Brief for appellant at 43 (emphasis in original). However, in his "Answer and Cross-Complaint," Aaron did specifically request an order "[m]odifying child support previously ordered by this Court and requesting the Court to calculate and order child support in accordance with the Nebraska Child Support Guidelines." In his "Pretrial Memorandum," Aaron listed both "Custody/Parenting time" and "Child support" as issues for trial. Moreover, at trial, both parties submitted proposed child support worksheets recalculating Aaron's obligation under both sole and joint custody arrangements. Under these circumstances, it was not an abuse of discretion for the court to recalculate Aaron's child support obligation under the child support guidelines. Accordingly Jessica's seventh assignment of error is without merit.

Finally, Jessica assigns the district court erred in failing to award her costs and attorney fees. Attorney fees and expenses may be recovered only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees. *Garza v. Garza*, 288 Neb. 213, 846 N.W.2d 626 (2014). Customarily, attorney fees are awarded only to prevailing parties or assessed against those who file frivolous suits. *Id.* A uniform course of procedure exists in Nebraska for the award of attorney fees in dissolution and modification cases. *Id.*

In this case, Jessica argues that she was entitled to attorney fees because she "should have prevailed on her request for sole legal and physical custody[.]" Brief for appellant at 46. Jessica

adds that Aaron's counterclaim consisted of "frivolous and harassing allegations that were clearly made in bad faith" and points out that "Aaron's income is nearly double Jessica's[.]" *Id*. Jessica concludes that these factors combined demonstrate that the court erred in failing to award attorney fees. However, because we conclude the court did not abuse its discretion in refusing to modify child custody, we disagree that Jessica "should have prevailed" in this matter. Thus, we conclude the court did not abuse its discretion in refusing to award Jessica attorney fees and costs.

## VI. CONCLUSION

For the foregoing reasons, we conclude that each of Jessica's assignments of error is without merit. Accordingly, we affirm the district court order for modification.

AFFIRMED.