IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

BRUMMELS V. BRUMMELS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JEREMIAH J. BRUMMELS, APPELLANT,

V.

CATHERINE L. BRUMMELS, APPELLEE.

Filed January 21, 2025.    No. A-24-149.

Appeal from the District Court for Lancaster County: KEVIN R. MCMANAMAN, Judge. Affirmed in part, and in part vacated.

Adam R. Little, of Nebraska Legal Group, for appellant.

Eddy M. Rodell for appellee.

RIEDMANN, Chief Judge, and PIRTLE and ARTERBURN, Judges.

RIEDMANN, Chief Judge.

## I. INTRODUCTION

A father challenges the order of the district court for Lancaster County denying a modification of custody but granting a modification of parenting time. We find no abuse of discretion in the denial of a custody modification but determine that the district court abused its discretion in modifying parenting time without a material change of circumstances having been alleged or proven. We therefore affirm in part, and in part vacate, the modification order.

## II. BACKGROUND

Jeremiah J. Brummels and his ex-wife, Catherine L. Brummels, are the biological parents of a son, born in 2013. In January 2018, a decree was entered dissolving the parties' marriage. The decree awarded the parties joint legal custody and Jeremiah sole physical custody. Neither party

- 1 -

was ordered to pay child support, as they had agreed to continue living in the same residence and jointly supporting the child.

Sometime in 2018, Jeremiah married his current wife, Amanda Brummels. In May 2019, Jeremiah and Catherine stipulated to a material change in circumstances in that they no longer resided in the same home and a modification of the custody order was entered.

The 2019 modification awarded the parents joint legal and physical custody and ordered an "8/6" schedule, in which the child spent 8 days with Jeremiah and 6 days with Catherine. Jeremiah was required to pay the child's school tuition, medical and dental expenses, agreed upon extracurricular activities, and $400 a month in child support. The modification order stated, in the event of a disagreement between the parties involving the child, Jeremiah would have the ultimate right to decide the issue.

In July 2022, Jeremiah filed a complaint to modify the custody order. He asserted a material change in circumstances in that "[Catherine] is no longer fit and proper to have the joint legal and physical care, custody and control of the minor child." Jeremiah requested that he be awarded sole legal and physical custody, subject to Catherine's reasonable rights of parenting time, and that Catherine be ordered to pay child support.

Catherine filed an answer to Jeremiah's complaint, specifically denying a material change in circumstances existed. The answer requested the court dismiss Jeremiah's complaint and grant her equitable relief.

A hearing on Jeremiah's complaint to modify was held on June 12 and December 5, 2023. Throughout the hearing, Jeremiah introduced evidence and witness testimony in an attempt to show Catherine had become unfit to parent since the 2019 modification. Jeremiah testified that Catherine had twice been arrested for driving under the influence of alcohol. Catherine's arrest records were introduced which showed her first DUI arrest was in December 2021, and later testimony showed she was arrested again on the same charges in January 2023.

Jeremiah further stated that, before the fall of 2022, their son had been involved in taekwondo, swimming lessons, and soccer among other extracurricular activities. Jeremiah stated he had pulled him out of those activities after it became cost prohibitive because he only attended half of the activities while in Catherine's care. According to Jeremiah, their son also was involved in church-related activities wherein the children sing or play instruments at several Sunday church services. Although he attends while in Jeremiah's care, Catherine has never taken him to participate during her parenting time.

Jeremiah also relayed that at one of their son's doctor's appointments in 2020 he and Catherine had a disagreement and there was some "aggressive behavior." Wanting to avoid confrontation, Jeremiah took the child to the car. Catherine followed and began yelling and "beating on the vehicle." As a result, Jeremiah called the police.

In addition to the above events offered in support of his modification request, Jeremiah testified to his preference that the parenting plan be modified to adjust the timeframe for phone calls between the noncustodial parent and the child, and to allow the child to reside with Catherine only every other weekend. However, no parenting plan was introduced into evidence.

Jeremiah called Catherine's 21-year-old daughter, Haleigh LaPointe, as a witness. Haleigh testified Catherine had sent her to live with her grandparents at age 14, but she had returned to live with Catherine between December 2021 and May 2022. While residing with Catherine, Haleigh

alleged Catherine often left the child at home overnight while she went to the bar, Catherine shared a bed with him, and instructed him not to tell Jeremiah she had been arrested for a DUI. Haleigh further alleged Catherine would call her to pick her up from the bar multiple times a week.

Amanda was also called to testify. She stated that, on an unspecified date in May 2019, more than 4 years prior to the hearing, Catherine had intimidated her at the child's kindergarten graduation. She described smiling at a group of laughing children while Jeremiah and Catherine were talking. Catherine came over to Amanda and put her finger in Amanda's face and told her to wipe the smile off her face. She also alleged other instances of Catherine making her generally uncomfortable.

Mary Gieske, the child's counselor, testified that the child had attended counseling every 2 weeks from December 2019 to January 2023. Gieske reported that Catherine had attended "less than 10" sessions near the beginning of the counseling sessions and attended once or twice around the fall of 2022. Jeremiah scheduled and participated in almost every appointment, and if he was not there, Amanda was there.

Gieske further testified she had observed the child to be more relaxed in Jeremiah's presence, and that he appeared comfortable with his father. She described him as being more reserved with Catherine, not exhibiting the same freedom or emotional responses he would with his father, and that he appeared more deferential to his mother's emotional needs—almost as an emotional caretaker.

Gieske diagnosed the child with anxiety which included "being in a divided household." Gieske clarified this was similar to an adjustment disorder. She stated that his anxiety and "adjustment disorder" diagnoses are "extremely" common among children growing up in divided households and ultimately concluded that the child loved both of his parents and she did not blame either parent for the diagnoses.

Catherine testified on her own behalf to the following. Neither of Catherine's DUIs occurred during her parenting time. Prior to January 15, 2023, she had been sober for 6 months; the January 15 event was an isolated incident of relapse. Catherine had maintained her sobriety since January 15, and, at the time of trial, she was seeing a substance abuse counselor weekly. Catherine was also on probation for her second DUI and was regularly tested for alcohol; all her tests had been negative.

Catherine explained that when she was drinking, she would go to the bar until early in the morning, but she had never left the child unsupervised. Rather, her 23-year-old son was always home with him during these times, and she had always returned home before morning.

Further, according to Catherine, Haleigh stayed in the child's room; thus, Catherine and he shared a bed between December 2021 and May 2022. Catherine clarified that, as of the time of the hearing, she did not allow the child to sleep in her bed, but he continued to come in her bed while she was asleep. She would remind him he was not supposed to sleep there but allowed him to stay because he had told her that is where he feels safe.

Catherine clarified the incident at the doctor's office referenced above. According to her, the conflict arose because "the initial visit wasn't going [Jeremiah]'s way." Therefore, Jeremiah picked up the child, exited the building, and immediately put the child in the vehicle. She testified she banged on the vehicle's windows because she was trying to say goodbye to her son.

Catherine also defended her inability to consistently get the child to taekwondo, explaining that her 16-year-old daughter could not drive at the time and had to be picked up from school. Also, while Haleigh was living with her, Catherine had worked part-time 4 days a week between 5 p.m. and 2 or 3 a.m. Taekwondo typically started at 5:30 p.m. Also, Jeremiah had told her "over and over" that she was not required to take the child to taekwondo during her parenting time.

As for other extracurricular activities which Jeremiah claimed the child had to quit because of Catherine's inconsistency in getting him there, Catherine disagreed that was the reason. According to her, Jeremiah discontinued swimming lessons because the child no longer needed them, only two soccer events were missed, and the church events were not required, and the child did not want to go.

Catherine disputed Gieske's opinion that the child acted as an emotional caretaker for her. She believed he knew he could be himself around her and that she had no restriction on him "being who he is."

Notably, Catherine testified her alcohol issues were spurred by anxiety, which was "triggered" by Jeremiah. Catherine stated she experienced "constant criticism" from Jeremiah, and he made her feel like she could do nothing right and that everything that happens to their child is her fault. Catherine stated, if Amanda is around, Jeremiah will not acknowledge or speak to her. However, when Amanda is not around, she and Jeremiah can have conversations, and they get along "just fine." She testified that, aside from Jeremiah's negative comments, she believed they could continue to co-parent.

In a written order following the hearing, the court determined that Jeremiah failed to prove a material change in circumstances and dismissed his complaint to modify custody. The court noted that the issues Jeremiah alleged were material changes in circumstances were in existence prior to the parties' 2019 modification order.

The court, however, modified the parenting plan to include an equal division of physical custody between the parents in which they alternated weeks, a provision making the child's birthday an alternating holiday, a right of refusal in the event the other parent is unable to exercise parenting time, an adjustment in the timeframes for telephone calls with the noncustodial parent, and a restriction on the parents from consuming drugs or alcohol during their parenting time. The order provided all other terms from the 2019 modification which had not been specifically modified remain in full force and effect. Jeremiah now appeals the district court's order.

## III. ASSIGNMENTS OF ERROR

Jeremiah assigns the district court abused its discretion in (1) finding he did not prove a material change in circumstances, (2) declining to modify physical custody in his favor, and (3) modifying the parenting plan without any counterclaim from Catherine nor proof of a material change in circumstances.

## IV. STANDARD OF REVIEW

An appellate court reviews a district court's decision regarding the modification of a child custody order de novo on the record, and the decision will be affirmed absent an abuse of discretion. See *Mann v. Mann*, 316 Neb. 910, 7 N.W.3d 845 (2024).

Parenting time determinations are also matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Conley v. Conley*, 33 Neb. App. 98, 11 N.W.3d 671 (2024).

An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id*.

## V. ANALYSIS

### 1. NO MATERIAL CHANGES JUSTIFIED MODIFYING CUSTODY ORDER

Jeremiah assigns the district court abused its discretion in finding he had failed to allege a material change in circumstances to justify modifying the custody order. He argues Catherine has exhibited "a pattern of poor decision making that affects [their son's] best interests." Reply brief for appellant at 9. He asserts he presented evidence in support of his conclusion that, when considered together, shows a material change in circumstances. We disagree and find no abuse of discretion in the district court's ruling.

Custody of a minor child will not ordinarily be modified absent a material change in circumstances, which shows either that the custodial parent is unfit or that the best interests of the child require such action. *Conley v. Conley, supra*. A material change in circumstances is the occurrence of something that, if it had been known at the time the most recent custody order was entered, would have persuaded that court to decree differently. *Id*.

Circumstances having occurred before the most recent custody order are relevant only insofar as they bear on whether the change in circumstances since the most recent custody order are material and substantial. *Id*. Before custody is modified, it should be apparent that any material change in circumstances alleged will be permanent or continuous, not merely transitory or temporary. *Id*.

It is the burden of the party seeking modification to show a material change in circumstances. *Id*. Specifically, the movant must show two elements: First, that since entry of the most recent custody order, there has been a material change in circumstances that affects the child's best interests, and second, that it would be in the child's best interests to change custody. *Id*.

In child custody cases, where the credible evidence is in conflict on a material issue of fact, an appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. See *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015).

### (a) Alcohol Issues

Jeremiah asserts that Catherine "clearly struggles with alcohol abuse," and argues this constitutes a material change in circumstances. Brief for appellant at 15. We reject his argument.

At the hearing, Catherine testified her DUI on January 15, 2023, was an isolated incident of relapse and she had maintained her sobriety since that date. Catherine continues to see a substance abuse counselor once per week and is regularly tested for alcohol under the terms of her probation, and all her tests have been negative. The evidence shows Catherine's alcohol issues have greatly improved and were merely transitory or temporary changes. See *Conley v. Conley*,

33 Neb. App. 98, 11 N.W.3d 671 (2024). The district court recognized the progress Catherine has made in this area and determined that Jeremiah failed to prove that Catherine's alcohol consumption constituted a material change in circumstances. Based on the evidence cited above, we find no abuse of discretion in the district court's decision.

### (b) Haleigh's Allegations

Jeremiah relies on Haleigh's testimony as evidence in support of his conclusion Catherine generally behaved negatively and inappropriately in the child's presence. He argues these facts constitute a material change in circumstances. We disagree.

The district court did not discuss Haleigh's testimony in its order and given the animosity that existed between her and Catherine during her adolescent years and thereafter, her credibility appears suspect. To the extent the district court may have found her not credible, we give deference to the district court's credibility determination. See *Schrag v. Spear, supra*. Aside from the credibility issue, however, Catherine's testimony refuted Haleigh's allegations, as further explained below. We find no abuse of discretion in the district court's failure to classify this as a material change in circumstance.

### (c) Negative Parental Relationships

Jeremiah asserts Catherine has exhibited poor decisionmaking and negative behavior toward him and Amanda. He argues this constitutes a material change because it serves as evidence Catherine has "failed to co-parent" and continuously placed the child in the midst of parental conflict. Reply brief for appellant at 10. We disagree.

At the hearing, Catherine testified, because of her divorce from Jeremiah, she had negative feelings toward Amanda. In the same year, Jeremiah divorced Catherine and married Amanda. Catherine stated these negative feelings were observable soon after her divorce and conceded their child had likely noticed this at the time. However, Catherine testified she no longer has negative feelings toward Amanda and is thankful to her for helping the child and taking care of him. She testified to now being able to talk about Amanda with him, and that she did not think he was concerned about her feelings toward Amanda anymore. Thus, any negative behavior on behalf of Catherine toward Amanda was temporary and the district court did not abuse its discretion in failing to find this behavior constituted a material change.

To the extent that Jeremiah claims Catherine's aggressive or noncooperative behavior constitutes a material change, we reject this argument. As noted by the district court, Jeremiah had been "demeaning, degrading, and dismissive" to Catherine. Therefore, we decline to characterize her responsive behavior as a material change in circumstances that would warrant a change in custody and find no abuse of discretion in the district court's failure to do the same.

### (d) Child's Anxiety and Sense of Safety

Jeremiah argues Catherine has a pattern of putting the child in the middle of their parental conflict, causing him to feel anxious and struggle to transition. He claims that the evidence demonstrates that the child struggles emotionally in Catherine's care in ways he does not in Jeremiah's care. We reject Jeremiah's arguments.

Gieske testified she had diagnosed the child with anxiety and an adjustment disorder, but she did not blame Catherine for causing or worsening the conditions. Rather, the evidence supports that the child began counseling 5 or 6 years prior to the hearing, because, according to Jeremiah, "he had parents that went through a divorce . . . he's got the two household[s] . . . [and Jeremiah] wanted to make sure [the child] was adjusting appropriately." The district court noted that Jeremiah acknowledged that most of the issues he raised existed prior to the original divorce decree in January 2018 and that Catherine was not blamed for the child's adjustment disorder. Although the adjustment disorder appears to have arisen due to a "divided household," we agree it existed at the time of the 2019 modification and we agree that it does not constitute a material change.

To the extent Jeremiah argues the child felt safer at his home because Catherine left him alone overnight, we have explained that the improvement of Catherine's alcohol issues has alleviated this issue. Catherine is now sober and testified she no longer goes to the bars at night. Accordingly, we find no abuse of discretion in the district court's determination that this does not constitute a material change in circumstances.

(e) Child's Extracurriculars

Jeremiah asserts that Catherine has failed to take the child to participate in his extracurricular activities, occasionally, because he does not want to go. Jeremiah argues that Catherine's "deferral to the wishes of an 8- or 9-year-old on these important matters does not serve his best interests." Brief for appellant at 19. We disagree.

Jeremiah testified the child had been involved in taekwondo, swimming lessons, and soccer. Also, Jeremiah complained that the child missed organized performances at Sunday church services throughout the school year wherein the children in his class sing or play instruments. Catherine explained that she took the child to taekwondo as many times as she could, but Jeremiah had told her "over and over" that she was not required to take him during her parenting time. Catherine further testified, that Jeremiah discontinued swimming lessons because the child no longer needed them, and that she took him to all but two soccer events occurring during her parenting time.

Catherine clarified that she does not take the child to "church events" because they are not required, and he has expressed he does not want to go. We find this evidence merely reflects a difference in parenting styles. Without evidence that the parties' parenting preferences inhibit them from executing their parental duties, we find that there is no material change. See *Coffey v. Coffey*, 11 Neb. App. 788, 661 N.W.2d 327 (2003).

The district court did not specifically address this complaint, but, rather, found that Jeremiah did not meet his burden of proof that a material change in circumstance occurred. Following our review of the record, we agree that none of Jeremiah's assertions amount to a material change in circumstances requiring a modification of custody. Therefore, the district court did not abuse its discretion in denying Jeremiah's request.

Because we find no material change in circumstances, we need not address the issue of best interests.

## 2. MODIFICATION OF PARENTING PLAN

Jeremiah argues that because Catherine had not filed a counterclaim, once the district court dismissed his complaint, there was no claim before the court which could be tried. Further, he argues that while Catherine's answer requested equitable relief, she did not include any factual allegation of her own that would present a material change in circumstances. He asserts that proof of a material change in circumstances is a prerequisite to modification and, even if her request for equitable relief was sufficient, she failed to prove a material change in circumstances. We agree Catherine failed to prove a material change upon which the district court could modify the parenting plan.

Catherine argues that the changes to the parenting plan were minor and for the convenience of all persons involved. She asserts the changes are "not the type of changes which require a showing of a material change in circumstances." Brief for appellee at 15. Relying on *Simons v. Simons*, 312 Neb. 136, 978 N.W.2d 121 (2022), she argues that when a situation is contrary to the principles of equity and can be addressed within the scope of judicial action, it is proper for a court of equity to devise a remedy for the situation.

We agree with Jeremiah that proof of a change of circumstances is a required element to modify a parenting plan. See *Weaver v. Weaver*, 308 Neb. 373, 954 N.W.2d 619 (2021). Proof of a material change of circumstances is the threshold inquiry in a proceeding on a complaint to modify, because issues determined in the prior custody order are deemed preclusive in the absence of proof of new facts and circumstances. *Janda v. Janda*, 32 Neb. App. 953, 9 N.W.3d 212 (2024).

Here, the district court found that Jeremiah had failed to show a material change in circumstances and dismissed his complaint. Although Catherine did not file a counterclaim alleging a material change, our review of the record indicates that both parties requested changes to the parenting plan in their testimony. However, even if a modification to the parenting plan was tried by implied consent, Catherine did not allege any material change in circumstances to support her request.

Instead, Catherine testified as to changes she would "desire" and responded "I would just like a 7-7. I would like more time with [the child]." As to other changes, she testified she "would like to just tweak" the timing of the noncustodial parent's phone call and have a right of first refusal. She did not offer any testimony that a material change in circumstances had occurred since those parenting plan provisions went into effect in 2019.

Catherine requested that the time of the noncustodial phone calls take place later on the weekend to allow the child to sleep later; however, no change in circumstances was asserted and the same circumstances would have existed in 2019 when the parenting plan was last entered. Catherine also testified she would like the right of first refusal when Jeremiah travels as opposed to Amanda watching the child. However, Jeremiah's travel existed at the time of the 2019 modification. He testified that he had previously been in a regional sales position and served as a director prior to being promoted to his current position. With each promotion, he was required to travel less. Thus, his travel is not a material change in circumstance. Based on this record, we find the district court abused its discretion when it entered the order modifying the parties' parenting plan without requiring a material change in circumstances to be proved. See *Weaver v. Weaver, supra*.

## VI. CONCLUSION

For the foregoing reasons, we affirm the district court's order denying modification of custody and vacate that portion of the order modifying the parenting plan.

AFFIRMED IN PART, AND IN PART VACATED.